**Robert S. CALVERT et al., Appellants,**

v.

**Helen JOHNSTON, Independent Executrix of the Estate of Grant Lindsey, Deceased and Testamentary Trustee for Grant Lindsey, Jr., Appellee.**

No. 10499.

Court of Civil Appeals of Texas.

Austin.

July 3, 1957.

Rehearing Denied Aug. 7, 1957.
Writ of Error Denied Oct. 9, 1957.
See 305 S.W.2d 778.

Will Wilson, Atty. Gen., W. V. Geppert, Marietta McGregor Payne, Asst. Attys. Gen., for appellants.

Helen Johnston, Houston, for appellee.

ARCHER, Chief Justice.

This suit was instituted by appellee to recover certain inheritance taxes which had been paid under protest as provided by Article 7057b, Vernon's Civil Statutes, and which were alleged to have been illegally assessed because Grant Lindsey, Jr., the beneficiary under the last will of Grant Lindsey, had been classified for inheritance tax purposes under Class E, Article 7122, V.A.C.S., rather than under Class A, Article 7118, V.A.C.S.

The trial court held in effect or by implication that Grant Lindsey, Jr., was and is the adopted son of Grant Lindsey and wife, Muriel Lindsey, and is entitled to all of the legal rights incident to the status of

an adopted child, including the right to pay inheritance taxes on that basis; and the trial court entered judgment for the appellee allowing recovery of $2,437.10.

This appeal is based on four assignments of error and are as follows:

"1. The trial court erred in overruling Appellants' special exception based upon Appellee's failure to state a cause of action because Appellee's petition affirmatively shows upon its face that Grant Lindsey, Jr., was never adopted in accordance with the controlling adoption statutes and therefore at the date of decedent's death was not a legally adopted child of the decedent so as to be entitled to the status requisite to classification under Class A–Article 7118, V.C.S.

"2. The trial court erred in entering judgment that Appellee recover from Appellants inheritance taxes in the sum of $2,437.10, together with interest earned thereon, if any, because the evidence introduced on the trial of this cause shows that Grant Lindsey, Jr., was never adopted in accordance with the controlling adoption statutes and therefore at the date of decedent's death was not a legally adopted child of the decedent so as to be entitled to the status requisite to classification under Class A–Article 7118, V.C.S.

"3. The trial court erred in rendering judgment for Appellee because there is no evidence to support a finding of an agreement or contract to adopt Grant Lindsey, Jr. Alternatively, if there be any evidence to support such a finding, said finding is against the great weight and preponderance of the evidence, is manifestly wrong and does not support the judgment below.

"4. The trial court erred in rendering judgment for Appellee because there is no evidence to support a finding that Grant Lindsey, Jr., relied upon the alleged agreement or contract to adopt or that the Grant Lindseys acquired the services and affection of Grant Lindsey, Jr., because of the Lindsey's representations that he had been adopted. Alternatively, if there be any evidence to support such finding, said finding is against the great weight and preponderance of the evidence, is manifestly wrong, and does not support the judgment below."

We shall first consider appellants' points Nos. 3 and 4 to the effect that there is no evidence to support a finding of an agreement to adopt Grant Lindsey., Jr., or that a finding that there was an agreement to adopt is so against the great weight and preponderance of the evidence as to be wrong; and there is no evidence to support a finding that Grant Lindsey, Jr., relied upon any such agreement, or that the Grant Lindseys acquired the services and affection of Grant Lindsey, Jr., because of any representation that he had been adopted.

The facts in this case are that Grant Lindsey, Jr., known also as Lindsey Grant MacGregor, born August 5, 1937, was the son of Gordon Alexander MacGregor and Ruth Viola MacGregor, of Canada. When the child was about 13 months old, his mother having died a few months earlier, was taken by his grandmother, the mother of Mrs. Muriel Lindsey, who brought the baby down from Canada to Fort Worth, Texas, to the Lindseys. The child's father continued to reside in Canada until his death in 1941. The child was not related to Grant Lindsey but was a nephew of Mrs. Grant (Muriel) Lindsey. The child continued to reside with the Lindseys until he was about 13 years old, at which time the Lindseys were divorced and the child then took turns staying with either Mr. Lindsey or Mrs. Lindsey.

Subsequently, Mr. Lindsey purchased a farm near Bryan, Texas and the boy lived with him until Mr. Lindsey's death in 1955.

Mrs. Muriel Lindsey testified as to taking the child and of efforts to adopt the child;

that the child's father gave a written statement for her and her husband to adopt the baby, but that such statement has been lost; that in 1939 she and her husband, Grant Lindsey, consulted with an attorney in Alexandria, Louisiana, concerning an adoption of the child but nothing further was done, since they were being transferred to Texas.

Mrs. Lindsey further testified that she and her husband enrolled the child in school under the name of Grant Lindsey, Jr., and referred to him as their child. The child was enrolled in school in Houston as their child; the neighbors thought that he was their natural born child; that they loved the child and gave him due care and attention.

The witness testified that Mr. Lindsey was very fond of the boy and they went places together.

On cross examination Mrs. Lindsey testified that the child was her nephew, and that she loved him as much as she could if he were her own son; that she never told the child's father that they had adopted the child, and the father never inquired if the child had been adopted; that after the father's death in 1941, they never made any further effort to legally adopt the child; that no promises were made to make the child their legal heir; that the child has always demonstrated an equal amount of love and affection for her and her husband.

Witness Benson testifying for the plaintiff, appellee herein, said that he was well acquainted with Grant Lindsey and with Grant Lindsey, Jr. and that Mr. Lindsey treated Grant Jr. well and their relationship was perfectly normal.

Marian Ferguson, a sister of Mrs. Lindsey, testified that Mr. and Mrs. Lindsey gave the child care and affection and took great interest in him; that she knew that Mr. and Mrs. Lindsey negotiated with the child's father in an effort to adopt the child; that she knew of the written statement given by Mr. MacGregor so that the adoption could be completed.

Mr. Harold Sullivan, a banker in College Station, testified that Mr. Lindsey brought a young fellow into the bank and introduced him as his son, Grant Lindsey, Jr., and opened an account in the name of Grant Lindsey, Jr.

Grant Lindsey, Jr., testified that he was 19 years old at the trial and that he was attending A & M College; that he grew up in the home of Mr. and Mrs. Grant Lindsey and addressed Mr. Lindsey as Daddy and was called "Boo", or "Little Grant"; that he did not remember when he learned that he was an adopted child; that after the death of Mr. Lindsey in 1955, and when registering at A & M College he designated Mrs. Lindsey as next of kin, and knew that she was his aunt, but considered her as his mother.

In the will of Grant Lindsey, all of his property was bequeathed to *"Grant Lindsey, Jr.,* being the same person as *Laurence Grant MacGregor,"* without designating him as his son.

Appellee relies strongly on the case of Garcia v. Quiroz, Tex.Civ.App., 228 S.W. 2d 953, er. ref., N.R.E., as authority supporting an adoption by estoppel. The Court in the Garcia case held that the question of adoption by estoppel is primarily one of fact. The jury in the Garcia case found in answers to special issues that Quiroz and wife agreed with the child's natural parents to adopt the child as their own son, and treated the child from his infancy as if he had been their own son; and that the parents of the child gave up their parental control and custody.

The trial court found that the adoption was not consummated. The Court of Civil Appeals reversed the judgment and rendered a judgment that an adoption by estoppel had been consummated.

In Garcia v. Saenz, Tex.Civ.App. San Antonio, 242 S.W.2d 230, no writ history,

the court held that one who claims the benefit of an oral agreement to adopt has the burden of establishing it by evidence that is clear, unequivocal and convincing. The court further held that acts of human kindness referable to an undertaking to rear and educate a helpless child do not prove an agreement to adopt, and that the act of standing in loco parentis is not the equivalent of adoption.

In Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, our Supreme Court discussed the adoption statutes and cases in connection therewith, and held under facts, in many aspects similar to those adduced in the instant case, that such were not clear, unequivocal and convincing.

The court further held that in no case has it upheld the adoptive status of a child in the absence of proof of an agreement or contract to adopt, and that it may be conceded that the acts and conduct of George Ann Barrow are strong circumstantial evidence of the existence of the agreement.

Further holding was that it would not have been unnatural for the aunt to take her orphaned niece and rear her, giving her all the care and advantages of which the aunt was capable.

The judgment of the trial court does not affirmatively find that Grant Lindsey, Jr., was in fact the adopted son of Grant Lindsey, but does allow appellee a recovery of the amount of money paid under protest as inheritance taxes on the estate of Grant Lindsey in the sum of $2,437.10, and we assume that by implication there was a finding by the trial court that an adoption had been consummated.

■ We believe that the trial court erred in rendering judgment for appellee, because the evidence was not clear, unequivocal and convincing that there was an agreement or contract by Mr. and Mrs. Grant Lindsey to adopt Laurence Grant MacGregor, herein called Grant Lindsey, Jr., and that the evidence was not sufficient to support a finding that Grant Lindsey, Jr. relied upon any agreement or contract to adopt, or that he acquired the attention and affection of Grant Lindsey, or that the services and affection of Grant Lindsey, Jr. for Grant Lindsey were based on the representations that he had been adopted.

This is not a case where a child has been taken by those who acquired his services and affection over the years, and who then sought to deprive the child of a property value, but in this case Grant Lindsey, Jr. was made the sole beneficiary of Grant Lindsey's estate, of some considerable amount.

Heretofore we have set out what we believe to be a fair résumé of the evidence, but shall now attempt to set out portions of the evidence that are particularly pertinent to our conclusions that the evidence was not clear, unequivocal and convincing that there was an agreement to adopt Grant Lindsey, Jr.

It is stated that the natural father of Grant Lindsey consented to his adoption, and that Grant Lindsey investigated the possibility of adoption. The testimony of Mrs. Lindsey is that no effort was made to adopt the child after 1941, and that:

"Q. I see. When you had the agreement with Grant, Junior's father that you were to have the custody of him, did you promise to make him an heir to your estate? Was that a part of your agreement? A. We didn't make any promises verbally. He was just our son, and we just—

"Q. That wasn't specifically gone into? A. Oh, no."

■ This evidence amounted to the expression of an intention or desire to adopt the child at some future date, and an expression of an intention to do a particular thing is not a promise to do it.

Price v. Price, Tex.Civ.App., 217 S.W. 2d 905, er. ref., N.R.E.

Mrs. Lindsey testified that she told Grant, Jr. that he was an adopted child, and did not tell him of any lack of formality, and that it was not necessary for her to have made the statement that the child had been adopted to induce him to remain with them.

Grant Lindsey, Jr. testified, in part:

"Q. Would it have made any difference to you if you had been informed before your father died that you hadn't been adopted by any formal rule or statute? Would it have made any difference toward your feeling toward Mr. Lindsey? A. No, sir; no, sir.

"Q. Not a bit? A. No, sir."

It is to be noted that there was no evidence that the child was induced to remain with the Lindseys because of a belief that he had been legally adopted.

Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77.

 The fact of recognizing and referring to a child as an adopted child does not necessarily effectuate an adoption, nor the fact that a child lives with foster parents from early years, calls them "daddy" and "mother" and goes to school under their name sufficient to result in an adoption by estoppel in the absence (1) of a contract, either written or oral, to adopt and (2) reliance upon such contract and representations of adoptive status.

Howell v. Thompson, Tex.Civ.App., 190 S.W.2d 597.

In the Cavanaugh case, supra [149 Tex. 573, 235 S.W.2d 978], the court stated:

"It would not have been unnatural when viewed in the light of common knowledge and experience for this aunt to take her orphaned infant niece and rear her to maturity, giving her all the care and advantages of which the aunt was capable, receiving in return that which was justly due in the way of affection and normal services, without any agreement or intention on the part of the aunt to adopt the child and thereby make her a legal heir to property. Some one had to care for the respondent or she would have become a charge upon the public. The question here is raised, as is ordinarily true in such cases, when the lips of the alleged adopter have been sealed by death and in an effort to establish an interest in property. Such claims should be received with caution. Before one should be decreed to be the adopted child and heir of another in the absence of compliance with the statute prescribing a simple method of effecting the status, proof of the facts essential to invoke the intervention of equity should be clear, unequivocal and convincing. Niehaus v. Madden, supra [348 Mo. 770, 155 S.W.2d 141]; 2 C.J.S. Adoption of Children § 26, p. 396, 171 A.L.R. 1320."

Our holding herein renders unnecessary a consideration of points Nos. 1 and 2.

The judgment of the Trial Court is reversed and judgment here rendered that appellee take nothing.

Reversed and rendered.

HUGHES, Justice.

I concur solely on the ground that Grant Lindsey, Jr., was not a "legally adopted child" within the meaning of art. 7118, Class A, V.A.C.S.

It is conceded by appellee that Grant Lindsey, Jr. has not been adopted by any "statutory process." This, to my mind, settles the issue. I believe that to be "legally adopted" requires a statutory adoption.

In Sweatman v. Bathrick, 17 S.D. 138, 95 N.W. 422, 424, the Court in considering the dedication of a street said:

"* * * it is evident from the language used that the learned circuit court was referring to legal dedication; that is, dedication provided for

by statute. It will be noticed the language used by the court is, 'was never legally dedicated to the public by the owners thereof.' A common-law dedication (that is, a dedication inferred from acts of the parties) is not usually designated as a legal dedication. The dedication in such cases arises by reason of estoppel."

To the same effect is State v. Siegel, 54 Wis. 86, 11 N.W. 435.

In People v. Mancuso, 255 N.Y. 463, 175 N.E. 177, 76 A.L.R. 514, Court of Appeals New York, Justice Cardozo, it was held that the word "Legally" should be interpreted as referring to the statutes of the State.

Our own courts are in accord with the principle of these decisions. In Carney v. Southwestern Motor Transport, Inc., 153 Tex. 267, 267 S.W.2d 802, 804, the Court said:

"When the Legislature provided that if a business is to come within the terms of Clause (3) it must be a 'public utility' 'as defined by the laws of Texas', it intended for the Secretary of State to include under Clause (3) only those 'public utilities' set forth in statutory enactments. Had the Legislature intended this Clause (3) to include 'a business affected with a public interest' it could easily have said so. Its failure so to do convinces us that such test is not the true test for determining if a business pays a tax under Clause (3). Only those businesses which the Legislature has defined as 'public utility' are entitled to pay the tax under Clause (3)."

In Sommers v. Doersam, 115 Ohio St. 139, 152 N.E. 387, 389, Supreme Court of Ohio, the Court in considering a devise in a will conditioned that the devisee remained unmarried until her death and has "legally adopted a child" had this to say:
"The expression 'legally adopted' means in accordance with the laws of the state in force and effect at the time of the execution of the will. These matters are, of course, statutory, as adoption was unknown to the common law of England; * * *. His use of the words 'legally adopted' indicates his desire that any adoption made by his widow should be in accordance with the law of the land."

More directly in point is the Iowa Supreme Court case of Wooster v. Iowa State Tax Commission, 230 Iowa 797, 298 N.W. 922, 923, 141 A.L.R. 1298, where the Court in construing an inheritance tax statute giving preferred status to a "legally adopted child" held a child adopted by estoppel is not within such classification saying:

"Appellee argues that the state is in such privity with Delia B. Wooster as to be bound by the estoppel against her. In support of this contention it is said the state allows the party to fix the status of the child and should be bound by the status so fixed by its authority. With this statement we do not agree. The state, through its legislative enactments, allows the status of an adopted child to be fixed by one method only, to wit, by statutory adoption. When such status has been thus fixed the legally adopted child becomes entitled to the exemption and classification provided by statute for property passing to a legally adopted child. Obviously, when a party fails to take the steps required by the state to effectuate a legal adoption the estoppel against said party resulting from such noncompliance with the statute does not bar the state from standing upon the facts as they actually exist in making classifications for inheritance tax purposes."

Appellee cites Sec. 3(b), 40 and 410 of the Texas Probate Code, V.A.T.S. These provisions became effective January 1, 1956. The decedent, Grant Lindsey, died August 28, 1955.

Section 3(b) "When used in this Code" defines a child as including "an adopted

child, whether adopted by any existing or former statutory procedure or by acts of estoppel."

This definition is new. It was not effective when decedent died. It does not purport to and in my opinion it does not repeal nor amend art. 7118, Class A.

Sec. 40 of the Code provides, in part, that "for purposes of inheritance under the laws of descent and distribution, an adopted child shall be regarded as the child of the parent or parents by adoption" and Sec. 410 prevents the closing of an estate before all inheritance taxes have been paid.

These sections have no bearing on the construction of art. 7118, Class A, supra.

The Legislature was not required to extend the benefits of an "A" Classification to adopted children and in doing so it had the right to restrict its application to those adopted in accordance with its statutes. This protective provision was and is essential to prevent the avoidance of taxes based on claims of adoption resting in parol and as to which the State, in most instances, is powerless to refute.

I have assumed, but not decided, that Grant Lindsey, Jr. was the adopted son of Grant Lindsey by estoppel.