**Christine LOWREY, Appellant,**

v.

**Bonifacio C. BOTELLO et al., Appellees.**

**No. 15024.**

Court of Civil Appeals of Texas, San Antonio.

Nov. 3, 1971.

**240**

Rivera & Ritter, San Antonio, for appellant.

King & Joseph, San Antonio, for appellees.

KLINGEMAN, Justice.

Action for declaration of heirship. Both appellant and appellees filed applications for declaration of heirship in the probate court, appellant Christine Lowrey (the stepdaughter of Virginia B. Cantu) alleging that she was the sole and only heir of Virginia B. Cantu, and appellees (Bonifacio C. Botello et al—half brothers and half sisters of Virginia B. Cantu) alleging that they were the lawful heirs of the said Virginia B. Cantu. The probate court entered its order that appellant was the daughter and only heir of Virginia B. Cantu and is entitled to all of the estate of the said Virginia B. Cantu. Appellees duly perfected their appeal in the district court. Trial in the district court was to the court without a jury on the basis of stipulations entered into by the parties, and judgment was entered by the district court that appellees (Botello claimants) were the sole heirs of Virginia B. Cantu, and that appellant is not entitled to any part of the estate of the said Virginia B. Cantu.

By four points of error appellant asserts that: (1) the trial court erred in finding that there was no evidence of any agreement on the part of Virginia B. Cantu to adopt appellant; (2) the trial court erred in holding that there was no equitable adoption or adoption by estoppel of appellant by the said Virginia B. Cantu; (3) the trial court erred in holding that appellant is not entitled to any right, title or interest in and to the estate of Virginia B. Cantu; and (4) the trial court erred in holding that the Botello claimants were the sole and only heirs of Virginia B. Cantu.

■ The necessary elements of an equitable adoption or adoption by estoppel are set forth in Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951), where the Court said that it was incumbent upon one claiming under an equitable estoppel or

adoption by estoppel to plead and prove that the adoptive parent or parents: (1) executed, acknowledged and filed a statutory instrument of adoption in the office of the county clerk; or (2) undertook to effect the statutory adoption but failed to do so because of some defect in the instrument of adoption, or in its execution or acknowledgement, or because of failure to record it; or (3) agreed with the person to be adopted, or with such person's parents, or some other person in loco parentis that he or she would adopt such person. The Court further said: "The effort to comply with the statute in the second instance and the agreement to adopt in the third instance are a necessary predicate for the interposition of the equity powers of the courts to decree an adoption by estoppel in favor of one who, acting under and by virtue of such defective proceeding or such agreement, confers affection and benefits upon the other. In no case has this Court upheld the adoptive status of a child in the absence of proof of an agreement or contract to adopt." 235 S.W.2d at 974.

In the trial before the district court, appellant and appellees stipulated that certain affidavits and documents constituted the sole evidence to be considered by the trial court. In such stipulation it was agreed that the trial court was to disregard conclusions and inadmissible portions of affidavits, it being further agreed that neither party agreed to the truth of the affidavit, but that affiants, if personally present, would testify in accordance with such affidavits.

The evidence, as shown by the stipulation and exhibits, may be summarized as follows: (1) death certificate of Virginia B. Cantu, formerly Virginia Botello, who died in San Antonio, July 2, 1966; (2) birth certificate of Virginia Botello, born November 22, 1903, to Panfilo Botello and wife, Cruz Alvarado Botello; (3) marriage license of Frank Cantu and Virginia B. Cantu. It will be seen from Exhibit 10 that when Virginia was a young girl she went to live with an uncle and aunt, Gonzalo Cantu and Apolonia Cantu, and thereafter used the name Cantu, rather than Botello; (4) decree of divorce of Virginia B. Cantu and Frank Cantu which recites that there were no children born of such marriage; (5) affidavit of Sarah T. Gerodetti, a teacher, which recites that she had known appellant Christine Lowrey since Christine was in the fifth grade; that Christine was the daughter of Frank Cantu, ex-husband of the decedent, Virginia B. Cantu; that she also knew Virginia B. Cantu and had seen her quite often; that Virginia B. Cantu by her speech and actions appeared to be a real mother of Christine and took more interest in her than most mothers; that although Virginia B. Cantu was in fact only the stepmother of Christine, she took more interest in her than Christine's father did; that after a son was born to Christine, Virginia B. Cantu referred to such child as her grandson; that Christine stayed with Virginia B. Cantu for three days during her last illness; that Christine and Virginia B. Cantu regarded each other with obvious love; that although Virginia B. Cantu never had any natural children and never legally adopted any children, she cared for and brought up Christine as her own natural daughter, and her her out to her relatives, friends and the public generally as her daughter; (6) affidavit of Sister Paula, a nun, who was also a teacher. This affidavit was somewhat similar to the affidavit of Sarah T. Gerodetti, and in effect states that Virginia B. Cantu treated and referred to Christine as her own daughter, and acted as if she were her real mother, and that when Christine's son was born, she referred to him as her grandson; (7) Christmas card from Virginia B. Cantu to Christine Lowrey signed, "Mother Virginia B. Cantu"; (8) Mother's Day card from Virginia B. Cantu to Christine Lowrey in which there is written, "To my Darling Baby on Mother's Day," and signed, "Love, Mother"; (9) birthday card from Virginia B. Cantu to Billy Lowrey, son of Christine Lowrey, signed, "Grandma Virginia"; (10) affidavit of heirship made by

Paula C. Botello and Maria S. Romo. Such affidavit states that Virginia B. Cantu died intestate; that she was the daughter of Panofilo Botello and Cruz Alvarado Botello, born as Virginia Botello, but that at the age of seventeen she went to live with her uncle and aunt, Gonzalo and Apolonia Cantu, and thereafter used the name Cantu; that Virginia married Frank H. Cantu, which marriage was terminated by divorce; that no children were ever born or adopted by Virginia B. Cantu; that Virginia B. Cantu's father and mother both predeceased her, no other children having been born of their marriage, nor any adopted; that after the death of Virginia's mother, her father married Paula C. Botello, of which marriage nine children only were born, being half brothers and half sisters of Virginia; that one of such children predeceased Virginia, having died intestate, unmarried and without issue. Such affidavit lists the other eight children of such marriage, who are the Botello claimants herein.

Viewed in their most favorable light to appellant, the affidavits at most show only that there was a mutual love and affection between appellant and Virginia B. Cantu; that Virginia B. Cantu treated her stepdaughter, appellant herein, as if she were her own daughter, and at times referred to her as her daughter, and referred to Christine's son as her grandson. There is nothing unnatural in such acts or conduct, and only evidences the natural love and affection that many stepparents and stepchildren have for each other.

▆▆▆▆ The fact of recognizing and referring to a child as an adopted child does not necessarily effectuate an adoption, nor is the fact that a child lives with foster parents from early years, calling them "Daddy" and "Mother," and goes to school under their name, sufficient to result in an adoption by estoppel in the absence: (1) of a contract, either written or oral, to adopt; (2) reliance upon such contract and representations of adoptive status. Calvert v. Johnston, 304 S.W.2d 394 [Tex.Civ.App. —Austin 1957, writ ref'd n. r. e., 157 Tex. 590, 305 S.W.2d 778 (1957)].

Cavanaugh v. Davis, supra, involved a niece who claimed to have been adopted and sole heir at law of her aunt by virtue of an alleged equitable estoppel. Such niece lived with her uncle and aunt, used their name, referred to them as "Mama" and "Daddy," and was taken care of, clothed, fed and educated by her uncle and aunt. The Supreme Court held that the Court of Civil Appeals erred in reversing the judgment of the trial court, and rendering a judgment establishing respondent (the niece) status as that of an adopted child of the aunt, saying:

"It would not have been unnatural when viewed in the light of common knowledge and experience for this aunt to take her orphaned infant niece and rear her to maturity, giving her all the care and advantages of which the aunt was capable, receiving in turn that which was justly due in the way of affection and normal services, without any agreement or intention on the part of the aunt to adopt the child and thereby make her a legal heir to property. Some one had to care for the respondent or she would have become a charge upon the public. The question here is raised, as is ordinarily true in such cases, when the lips of the alleged adopter have been sealed by death and in an effort to establish an interest in property. Such claims should be received with caution. Before one should be decreed to be the adopted child and heir of another in the absence of compliance with the statute prescribing a simple method of effecting the status, proof of the facts essential to invoke the intervention of equity should be clear, unequivocal and convincing." 235 S.W. 2d at 978

See also: Stewart v. Davis, 149 Tex. 584, 235 S.W.2d 979 (1951); House v. House,

222 S.W.2d 337 (Tex.Civ.App.—Texarkana 1949, no writ).

Appellant's basic attack is on the trial court's finding that there was no evidence of any agreement on the part of Virginia B. Cantu to adopt Christine Lowrey, and that consequently, there has been no equitable adoption or adoption by estoppel of her and that the said Christine Lowrey is not entitled to any right, title or interest in and to said estate.

The rule is well settled that the judgment of the trial court will not be set aside if there is any evidence of a probative nature to support it, and a Court of Civil Appeals cannot substitute its finding of fact for that of a trial court if there is any evidence in the record to sustain the trial court's finding. Liedeker v. Grossman, 146 Tex. 308, 206 S.W.2d 232 (1947); First State Bank, Temple v. Metropolitan Casualty Insurance Co. of New York, 125 Tex. 113, 79 S.W.2d 835 (1935). The question here is not whether the trial judge could have found the existence of an agreement to adopt from the evidence before him and hereinbefore summarized, but whether he was compelled to do so; not whether the relevant facts and circumstances, as established by the acts and conduct of the parties, would authorize a logical inference that the agreement did exist, but whether such facts and circumstances could permit of no other reasonable inference.

Appellant did not plead equitable adoption or adoption by estoppel, and an examination of appellant's pleadings show that nowhere are there any allegations showing a promise, agreement or contract by Virginia B. Cantu with appellant or any other person that she would adopt appellant, or that she had ever been adopted; nor is there any allegation that appellant relied on any such purported representations. A like examination of the evidence shows that nowhere is there a scintilla of evidence of any agreement, promise or contract by Virginia B. Cantu, oral or written, with appellant or any other person that she had or would adopt appellant. There is a total absence of pleadings or proof of any agreement to adopt or of any adoption by estoppel.

Finding no error of the court below, the judgment is affirmed.