Helen Beatrice Watkins KING,
Appellant,

v.

The HEIRS AND BENEFICIARIES OF
Beatrice Campbell WATKINS, et
al., Appellees.

No. 1480.

Court of Appeals of Texas,
Tyler.

Sept. 17, 1981.

Rehearing Denied with Opinion Oct.
29, 1981.

Marion Holt, Nacogdoches, for appellant.

David Adams, Nacogdoches, Leo A. Kissner, Houston, Tom P. Senff, Nacogdoches, for appellees.

McKAY, Justice.

This is an equitable adoption case in which appellant Helen Beatrice Watkins King is seeking to be declared the adopted daughter by estoppel of the late Beatrice Campbell Watkins, who died intestate, and as such heir, the owner of a one-third (⅓) interest in 220 acres of land in Nacogdoches County. The suit was brought against the other heirs of Beatrice Campbell Watkins who hold the disputed interest in the property by virtue of intestate succession.

1. Mrs. Watkins originally held a ⅓ interest in the property involved here. Upon her death the disputed ⅙ interest passed to her sister and the heirs of her late brother on the basis of an heirship affidavit filed in Nacogdoches County. The remaining ⅙ interest passed to Mr. Watkins. When Mr. Watkins died in 1966, appellant inherited his ⅙ interest as his adopted daughter.

2. The remaining special issues as answered by the jury are as follows:

SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that Helen Elrod, now Helen Beatrice Watkins King, in reliance on an agreement, if any, by Beatrice C. Watkins and Gladys Strawn Elrod for Beatrice C. Watkins to adopt, rendered to Beatrice C. Watkins, the love, obedience, affection and duties of a child just as if she had been born to her?

Answer "Yes" or "No"

ANSWER: Yes

SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that the Plaintiff, Helen King, delayed an unreasonable period of time before filing this law suit against William Perry Campbell,

In her petition, appellant claimed that Beatrice Campbell Watkins (Mrs. Watkins) and her husband C. B. Watkins had made an agreement with appellant's natural mother, Gladys Strawn Elrod, to adopt appellant and that appellant, in reliance on that agreement, had lived in the Watkins' household where she was fed, clothed and educated and had rendered to the Watkins the services and affections of a daughter. It is undisputed that no effort was made by the Watkins to legally adopt appellant prior to the death of Mrs. Watkins on January 6, 1943; however, on February 12, 1945, Mr. C. B. Watkins, now deceased, did legally adopt appellant.[1]

The central issue in this lawsuit is whether there was an agreement between appellant's natural mother and Mrs. Watkins to the effect that the latter woman would adopt appellant. The case was tried before a jury who found in answer to special issue 1 that the natural mother of appellant and Mrs. Watkins did *not* agree that appellant be adopted by Mrs. Watkins. This finding precluded recovery of the property interest on the grounds of equitable adoption, although the other issues submitted to the jury were answered favorably to appellant.[2]

Clifford G. Campbell, James R. Campbell, Emily Campbell (widow of Maury Campbell) and Dorothy Campbell Senff, and those under whom they claim?

In connection with this special issue, you are instructed that the period of time in which a person having a claim should assert that claim is that period of time in which a person of ordinary prudence would have acted under the same or similar circumstances.

In answering this issue, you will not consider any period of time prior to the Plaintiff, Helen Beatrice King, reaching her 21st birthday.

Answer "Yes" or "No"

ANSWER: No

SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the Defendants, the Heirs and Beneficiaries of Beatrice Campbell Watkins, et al, in good faith, changed their position to their detriment, because of the unreasonable delay, if any you have found, of the Plaintiff, Helen Beatrice King, in filing this suit?

Answer "Yes" or "No"

ANSWER: No

Prior to judgment being entered in the case, appellant filed a motion to disregard the finding to special issue 1. This motion was overruled, and judgment was entered against appellant who subsequently filed a motion and amended motion for new trial which were also overruled.

Appellant brings five points of error upon appeal: (1) there is no evidence to support the jury's finding in special issue 1; (2) the jury's finding to issue 1 is against the great weight and preponderance of the evidence; (3) there is an irreconcilable difference between the jury's answers to issues 1 and 2; (4) the court erred in allowing a certain witness to testify as to the legal difference between a guardianship and an adoption; and (5) the trial court should have charged the jury in connection with issue 1 to consider the acts, conduct, admission and other relevant facts and circumstances of the persons involved in determining whether an agreement to adopt was made.

 In the absence of an attempted statutory adoption by Mrs. Watkins, it was incumbent upon Mrs. King to present evidence in the trial court of an agreement to adopt between her natural mother and Mrs. Watkins, as an agreement to adopt is a necessary element of adoption by estoppel. *Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972, 974 (1951); *see* O. Speer, Texas Family Law § 14.6 (5th ed. 1981). As emphasized by appellant, there need not be direct evidence of an oral or written agreement to adopt, rather such agreement may be proven by the " 'acts, conduct and admissions of the parties and other relevant facts and circumstances.' " *Moran v. Adler*, 570 S.W.2d 883, 885 (Tex.1978). With this rule of law in mind, we have examined the evidence adduced below regarding any agreement to adopt and have summarized the relevant testimony as follows.

Gladys Strawn Elrod (now Worrell), appellant's natural mother, testified that appellant was born in Florida on January 11, 1927, and was named Ella Mae Elrod at birth. Mrs. Worrell stated that in 1929, she, appellant and Ernestine, appellant's younger sister, moved to Cushing, Texas, to live with Mrs. Worrell's sister, Perry Lee Brewer. In 1930, Mrs. Brewer moved to Houston; Mrs. Worrell was at that time unable to care for the children herself and consented to the adoption of Ernestine by the Ernest Wallace family. Appellant, then 3½ years old, was left with a Mr. and Mrs. McKnight while Mrs. Worrell sought work in Rusk, Texas, and then in California. Soon thereafter the McKnights divorced, and without the knowledge of Mrs. Worrell, appellant went to live with Beatrice and C. B. Watkins.

Continuing her narration of events, Mrs. Worrell related that she moved to California in 1930 and did not return to Texas until 1935 while on the way to visit her seriously ill father in Louisiana. Upon her arrival at the Wallace home to visit Ernestine, Mrs. Worrell was informed that appellant, then eight years old, had moved to Douglass, Texas, to live with the Watkins. The witness then went to Douglass and stayed in the Watkins' home overnight "to visit them and see how the home was," apparently in an attempt to decide whether she would allow appellant to remain with the Watkins. Appellant had apparently lived with the Watkins since she was four years old and did not recognize Mrs. Worrell. Mrs. Worrell further testified that she was told that appellant had been registered in school as "Helen Beatrice Watkins" and that appellant was affectionate toward the Watkins and treated them as if "they were everything to her." She also stated that she decided during the night to leave appellant with the Watkins if they were amenable. Furthermore, Mrs. Worrell recounted that as she was leaving, Mr. Watkins accompanied her to the gate, and the following exchange ensued, in her words:

'Gladys—he [Mr. Watkins] called me by my first name—when you come back again to see us your little girl will be our little girl because me and my wife wants to adopt her and she will be our little girl when you visit us again.' And I told them—I said, 'I think that will be good, I think it will be a good home for her here as I have to work and it is hard for me to take care of a child and work.'

No other significant conversations regarding appellant were made during this visit, and apparently, Mrs. Watkins was not present at the time the above statement was made.

At trial Mrs. Worrell testified that she returned to California and did not talk with the Watkins again until 1937. She related that she had a short visit with Mrs. Watkins alone at that time and quoted Mrs. Watkins as saying,

> Gladys, I'll tell you, I've been so sick for the last two years[3] that I haven't been able to go through no legal—any kind of a legal thing of any kind. We have not given up hope and we have not given up the plan to adopt Helen. That's what we intend to do.

Mrs. Worrell testified that she left in two hours, did not see appellant, and did not return to the Watkins' home on her return to California. Apparently Mrs. Worrell had no further contact with Mrs. Watkins and did not see appellant again until 1949 when appellant and her husband stopped to visit in California.

Mrs. Worrell was the only witness called to testify who might have been qualified to offer direct evidence of an agreement between herself and Beatrice Watkins for the adoption of appellant, and she did not do so. It is not apparent from her testimony that an offer to adopt was made personally by Mrs. Watkins; neither is there evidence that Mrs. Worrell expressly consented to the adoption of appellant by Mrs. Watkins. Appellant in her brief admits to the lack of such evidence, but argues that Mrs. Watkins implicitly acquiesced to her husband's agreement to adopt appellant as recited above and that all of Mrs. Watkins' acts and conduct proved that there was an agreement to adopt.

As evidence of Mrs. Watkins' intention to adopt appellant, appellant calls our attention to the testimony of several witnesses who had been familiar with the Watkins family. Mrs. Charlie Beck, sister to Bertha Wallace (Ernestine's adoptive mother), testified that appellant was nearly two years old and not yet living with the Watkins when she first knew her. Mrs. Beck was later a beautician in Nacogdoches and stated that Mrs. Watkins patronized her beauty shop for a number of years and on several occasions brought appellant to the shop with her. She observed that Mrs. Watkins and appellant expressed love and affection toward each other and that their relationship seemed to be like that of mother and daughter. Mrs. Beck stated that she thought appellant had been adopted by the Watkins, but had not asked Mrs. Watkins.

The Reverend Garnett House, a retired Methodist minister, was also called as a witness. He had been the Watkins minister in Douglass from 1934 to 1937 and testified that he had been a good friend of the Watkins' and had visited with them often. Rev. House testified that Beatrice and Charlie Watkins had often told him they intended to adopt appellant, that he had observed the relationship of Mrs. Watkins and appellant to be that of mother and daughter and that he thought appellant had been adopted by the Watkins.

Mrs. Billie Jo Koonce Ball, the adopted daughter of Mrs. Watkins' sister and a childhood friend of appellant, testified to a belief that appellant had been adopted by the Watkins and also attested to the fact that a mother-daughter relationship existed between Mrs. Watkins and appellant. Additionally, appellant's sister Ernestine, who was a frequent visitor in the Watkins' home as a child, observed that her sister and Mrs. Watkins maintained a parent and child relationship. Likewise, Eva Bates Sandlin, a former Douglass resident, testified that Mrs. Watkins had told her that she and her husband were going to adopt appellant.

▌ In her first point of error, appellant contends that there was no evidence to support the jury's failure to find an agreement to adopt. When a jury gives a negative

---

**3.** It is undisputed that Beatrice Watkins suffered a heart attack in 1936 and had other attacks thereafter.

answer to an issue inquiring as to the existence of a vital fact, technically the proper point to be raised is that the evidence conclusively establishes the vital fact as a matter of law. Calvert, "'No Evidence' & 'Insufficient Evidence' Points of Error," 38 Texas L.Rev. 361, 363-4 (1960). We construe appellant's first point of error as raising that question; however, after considering only that evidence which might support the existence of an agreement to adopt, as set out in the lengthy recitation of testimony above, we hold that appellant did not establish that element of equitable adoption as a matter of law.

■ Appellant's second evidentiary point can be sustained only if the jury's finding, considering all of the evidence, "is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust." Calvert, supra, at 367-8. The state of the evidence in the case before us does not, however, warrant a reversal of the trial court's judgment based on the jury's answer to issue 1. Standing alone, an expression of intention to adopt in the future, is not sufficient to create an adoption by estoppel. Calvert v. Johnston, 304 S.W.2d 394, 397 (Tex.Civ.App.—Austin 1957, writ ref'd n.r.e.). Apparently the court in Calvert would not accept evidence of an intention to adopt as proof of an agreement to adopt, as "an expression of an intention to do a particular thing is not a promise to do it." Calvert v. Johnson, supra. Therefore, the testimony of witnesses as to Mrs. Watkins' intention to adopt appellant cannot be considered as evidence of an agreement to adopt.

In Lowrey v. Botello, 473 S.W.2d 239 (Tex.Civ.App.—San Antonio 1971, no writ), the decedent's stepdaughter was seeking to be declared an heir on the basis of equitable adoption. Affidavits were presented to the effect that decedent took more interest in her stepdaughter than most mothers; that decedent and her stepdaughter regarded each other with obvious love; that decedent cared for and brought up her stepdaughter as her own daughter; that decedent held her stepdaughter out as her own daughter and that she referred to herself as "Mother" when signing greeting cards. The trial court found no evidence of any agreement to adopt the claimant because the affidavits showed only a mutual love and affection not unnatural between stepparents and their stepchildren. The court in Lowrey quoted the Supreme Court in Cavanaugh v. Davis, supra, noting a similarity of fact situations in the two cases:

It would not have been unnatural when viewed in the light of common knowledge and experience for this aunt to take her orphaned infant niece and rear her to maturity, giving her all the care and advantages of which the aunt was capable, receiving in turn that which was justly due in the way of affection and normal services, without any agreement or intention on the part of the aunt to adopt the child and thereby make her a legal heir to property. Some one had to care for the respondent or she would have become a charge upon the public.

In the present case, counsel for appellees elicited testimony on cross-examination to the effect that it was not unusual during the 1930's Depression for families to take in the children of others and care for them as their own. For this reason we do not believe that evidence of an apparent parent-child relationship between Mrs. Watkins and appellant can be used to support an agreement to adopt. Furthermore, there is no evidence that Mrs. Watkins actually represented to others that she had adopted appellant.

■ Counsel for appellees impeached the credibility of appellant's natural mother, Mrs. Worrell, by showing that her testimony was inconsistent with her testimony in prior proceedings in that no mention had previously been made of her 1937 visit with Mrs. Watkins. It is within the province of the jury "to resolve the conflicts and inconsistency in the testimony of any one witness...," Taylor v. Dallas Transit Co., 351 S.W.2d 554, 556 (Tex.Civ.App.—Amarillo 1961, writ ref'd n.r.e.), because "the jury is the exclusive judge of the credibility of witnesses and the weight to be attached to

their testimony." 1 C. McCormick & Ray, Texas Law of Evidence § 3 (Texas Practice 2d ed. 1956); *Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359, 365 (1957).

■ We therefore conclude that appellant has not produced the quantity and character of evidence which would render the jury's finding of no agreement to adopt to be against the great weight and preponderance of the evidence and accordingly overrule appellant's second point of error.

Appellant's third point of error is without merit. The wording of special issue 3 makes a finding of reliance on an agreement to adopt by appellant conditional upon a finding that such an agreement did exist. Because the jury failed to find an agreement to adopt in the first issue, the second issue was rendered meaningless. *See LeMaster v. Farrington*, 103 S.W.2d 189, 191 (Tex.Civ.App.—San Antonio 1937, writ dism'd.).

■ An order naming Beatrice Watkins as the temporary guardian of Helen Watkins was introduced into evidence with no objection from appellant's counsel. It is undisputed that Mrs. Watkins was seeking to establish a guardianship in that proceeding and was not attempting to adopt appellant. While appellant is correct in her assertion that a witness may not make statements of law to the jury, *Collins v. Gladden*, 466 S.W.2d 629, 632 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.), we cannot say that such error "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court..." Tex.R.Civ.P. 434. The error made was harmless and does not justify reversal of the trial court's judgment.

■ Neither is the refusal of the trial court to grant appellant's instruction in connection with issue 1 a sufficient ground for reversal. The trial court is given considerable discretion in submitting instructions to the jury. *Dorman v. Langlinais*, 592 S.W.2d 650, 652 (Tex.Civ.App.—Beaumont 1979, no writ); *McCane Sondock Detective Agency v. Penland Distributors*, 523 S.W.2d 62, 67 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); See Tex.R.Civ.P. 277. It is noted in 3 McDonald, Texas Civil Practice § 12.14.1 (1970) that the only requirement imposed on the trial court under old article 2189, forerunner to Rule 277, was to submit instructions explaining and defining terms in the charge and that Rule 277 placed no additional requirements on the trial judge in preparing his charge. *See also 1st St. Bank & Trust Co. of Edinburg v. George*, 519 S.W.2d 198, 207 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.). Furthermore, no abuse of discretion has been shown by appellant and we therefore overrule her final point.

The judgment of the trial court is accordingly affirmed.

### ON MOTION FOR REHEARING

We agree that the preponderance of the evidence standard is the proper one to be applied in this case, but hold that appellant has failed to produce both the quality and quantity of the evidence sufficient to satisfy her burden of proof. As to the evidence of Mrs. Watkins' intention to adopt, appellant is correct in pointing out that such evidence is some circumstantial evidence of an agreement to adopt and must have been considered by the jury. Nevertheless, the evidence on this point is insufficient, standing alone, to establish an agreement to adopt and does not render the jury's answer to Special Issue Number One to be against the great weight and preponderance of the evidence. Likewise, the testimony of witnesses familiar with the Watkins' family which has been recited in our original opinion constitutes circumstantial evidence of an agreement to adopt which alone could not support a finding of an agreement to adopt. Even considering all of the circumstantial evidence presented by appellant to show an agreement to adopt, we hold that appellant did not show by preponderance of the evidence that there was any agreement

by Mrs. Watkins to adopt appellant, and therefore find no grounds for reversal on the basis of the jury's answer to Special Issue Number One.

 Appellant has raised one more point in her Motion for Rehearing which warrants further discussion by this Court. It is true that, technically, Special Issue Number Two was not made conditional upon Special Issue Number One. However, all case law directs that when examining issues in search of a fatal conflict, the issues must be construed to be compatible whenever possible. The negative answer to Special Issue Number One seems clearly to indicate that the jury, after considering all of the evidence, failed to find any agreement to adopt. The answer to Special Issue Number Two, i. e., that there was reliance by appellant on an agreement to adopt, does not necessarily assume that such an agreement did exist, that simply that appellant believed, perhaps without reason, that there was such an agreement. Furthermore, the Texas Supreme Court in *Littlerock Furniture Manufacturing Co. v. Dunn*, 222 S.W.2d 985, 991 (Tex.1949), adopted the following test for determining whether or not issues were in fatal conflict:

> The test... is, whether taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant.

In this case, the jury's negative answer to Special Issue Number One effectively defeats appellant's cause of action based on equitable adoption; however, it cannot be assumed from the jury's affirmative answer to Special Issue Number Two that an agreement to adopt did exist, and based on the jury's answer to this question judgment could not have properly been entered in favor of appellant. We therefore conclude that no fatal conflict exists between Special Issues Number One and Two.

The Motion for Rehearing is overruled.