Day, J.
 

 Is there a latent ambiguity in the will of Philip Knell, deceased, disclosed by the extrinsic evidence in this record, which shows that the testator’s intent was to make the plaintiff in error his residuary beneficiary?
 

 The second item of the will, in which it is claimed the latent ambiguity exists, is as follows:
 

 “I give, devise and bequeath all of my property, real, personal and mixed, to my beloved wife, Maggie Knell, so long as she remains unmarried and if she has remained unmarried until her death and has legally adopted a child or children of her own blood relation or of the blood relation of myself, then upon her death or remarriage to such child or children in fee simple, but if she remarries or dies unmarried without having adopted a child
 
 *147
 
 or children, said property shall go to my next of kin then living
 
 per stirpes
 
 and not
 
 per capta
 
 in fee simple.”
 

 The rules with reference to the construction of language of wills have been so many times stated that it seems unnecessary to reiterate them, but at the expense of repetition the following general and accepted doctrine may be stated:
 

 “A
 
 testator is presumed to use the words in which he expresses himself in his will in their primary or ordinary sense, and in construing the will the words employed are to be taken in that sense, unless it is manifest from the context of the whole will, or from the subject-matter, that the testator intended to use them in a different sense, or unless a reading of the words in their primary or ordinary sense will lead to some absurdity, repugnancy, or inconsistency with the declared intention of the testator as ascertained from the whole will, in which case the natural and ordinary meaning of the words may be modified, extended, or abridged. Where the words when given their natural, ordinary, or popular meaning are plain and unambiguous, and show a clear intention on the part of the testator, they must be given that meaning notwithstanding their effect, and such meaning cannot be departed from for the purpose of giving effect to what it may be supposed was the intention of the testator, or merely because they lead to consequences which are capricious or even harsh or unreasonable.” 40 Cyc., 1396.
 

 These principles are amply sustained by the text-book writers and the adjudicated cases, and applying them to the ease at bar we find nothing
 
 *148
 
 in the will bnt that which is plain, direct, and simple language, and a court is bound to give such words their ordinary and accepted significance. Such technical words as are used therein are used correctly and in a plain and easily understood meaning in the law. The expression “legally adopted” means in accordance with the laws of the state in force and effect at the time of the execution of the will. These matters are, of course, statutory, as adoption was unknown to the common law of England; and in states whose jurisprudence is based on that system, the right exists by virtue of the statutes. In this state the so-called designated heir statute, Section 8598, General Code (52 Ohio Laws, p. 78), was enacted shortly prior to our general adoption statutes, Section 8024
 
 et seq.,
 
 General Code (67 Ohio Laws, 14), but all were in full force and effect at the date of the execution of the will, and the testator is, of course, presumed to have had knowledge of their existence. His use of the words “legally adopted” indicates his desire that any adoption made by his widow should be in accordance with the law of the land. The record discloses that after the death of the testator his widow, Maggie Knell, never remarried; that she knew of the terms of the will, for after the death of the testator, she discussed the same with her son Charles Sommers, and for some reason, best known to herself, failed to comply with its plain and simple terms, to wit, that in the event that she had not remarried and desired to pass the estate, after her death, to others than the next of kin of the testator, it was necessary for her to legally adopt a child or children of her own
 
 *149
 
 blood relation or of tbe blood relation of the testator. On the other hand, she complied literally with the terms of the will providing that if she “dies unmarried without having adopted a child or children, said property shall go to my next of kin then living
 
 per stirpes
 
 and not
 
 per capta
 
 in fee simple. ’ ’
 

 We think this language so plain, simple, and direct that, under the facts disclosed by this record, it brings us to but one conclusion, that is, that upon the death of Maggie Knell, widow of the testator, not having remarried, nor legally adopted a child or children, and the testator having failed to adopt a child or children, as designated in the will, the estate passed to the next of kin of the testator, as in said will directed.
 

 While Maggie Knell could not legally adopt her own son, she had opportunity to legally adopt a child or children of her son, who would be her “own blood relation,” if she saw fit so to do; and, while this was apparently discussed, it was never carried out. Or again, she might have adopted some of the blood relations of the testator. However, with knowledge of the terms of the will, which she discussed with the plaintiff in error, she saw fit to refrain from complying with this plain and unambiguous language in the will. Such being the fact, the result must be adverse to the claims of the plaintiff in error, and the estate must pass to the next of kin of the testator. In the language of Shauck, J., in
 
 Smith
 
 v.
 
 Hunter, Trustee,
 
 86 Ohio St., 106, 115:
 

 “If the court should supply them [words limiting succession to the daughter’s heirs at law, who
 
 *150
 
 should be of her blood], it would be amending his will rather than construing it. However confidently we might follow counsel in the conjecture that the testator would have used such terms if he had foreseen all that has now occurred, we should still be admonished that in ascertaining the meaning of the testator it is of first importance to assume that he meant what he said.”
 

 Courts cannot “devise a new scheme for the purpose of spelling out a new theory by which it can be said that the testator intended something which his language shows that he did not intend,”
 
 Wright
 
 v.
 
 Wright,
 
 118 N. Y. S., 994, affirmed 140 App. Div., 634, 125 N. Y. S., 875.
 

 Adams, Adm’r.,
 
 v.
 
 Jones,
 
 176 Mass., 185, 57 N. E., 362: “When words have an ascertained meaning, and admit of a rational interpretation, and there is nothing in other portions of the will indicating that they were not used in their ordinary sense, a court cannot depart from that ordinary sense for the purpose of giving effect to what it may be guessed was the intention of the testator, because it would result in a fair distribution of the estate. If, in such a case, the testator did in fact intend to make an equal distribution, he has failed to express that intention in using the words he did use, and the power of the court goes no further than to ascertain the true meaning of the words used by him as he used them.”
 

 “Whatever method may be resorted to for the interpretation of a will, it must be applied solely with a view to arrive at the intention of the testator, as his intention may be gathered from the language found in the instrument itself. However
 

 
 *151
 
 clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution.”
 
 Daugherty, Adm’r.,
 
 v.
 
 Rogers,
 
 119 Ind., 254, 20 N. E., 779, 3 L. R. A., 847.
 

 While this will and its history are unusual, we believe that no useful purpose will be served by a detailed discussion of the extrinsic evidence introduced in this case. It is apparent that this testator provided lawful means by which this estate might have passed to a child or children of the blood relation of Maggie Knell, or to such of the blood relations of the testator as she might have legally adopted. Failing so to do, and having died .without remarrying, this estate now goes under the terms of the will to the next of kin of the testator living at the date of the death of said Maggie Knell, to be distributed
 
 “per stirpes
 
 and not
 
 per capta
 
 [capita] in fee simple.” Having reached this conclusion, it follows that the judgment of the Court of Appeals must be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Allen, Kinkadb and Robinson, JJ., concur.