abandoned. The passage of the time called for by the rule will so indicate.

*Judgment accordingly.*

MILLER, J., concurs.
DUFFY, J., not participating.

THE FIRST TROY NATIONAL BANK AND TRUST CO., TRUSTEE, APPELLEE, *v.* HOLDER ET AL., APPELLEES; STOUDER MEMORIAL HOSPITAL, APPELLANT.

(No. 553—Decided March 21, 1959.)

Mr. *Franklin L. Shipman,* for plaintiff-appellee.

Mr. *Ellis W. Kerr,* for defendant-appellee Hayner Advisory Board.

Mr. *Robert S. Miller,* for defendant-appellee Dettmer Hospital.

Messrs. *Faust & Harrelson,* for appellant.

Mr. *Mark McElroy,* attorney general, and Mrs. *Neva Wertz,* for the state of Ohio.

KERNS, J. This cause comes to this court on questions of law and fact from the Common Pleas Court of Miami County, Ohio.

Charles C. Hayner, a resident of Troy, Ohio, died October 11, 1930, and thereafter a will and two codicils were admitted to probate, by which he made disposition of his estate.

The original will was executed August 19, 1922, and subject to a life estate to his wife, the pertinent items of that will are as follows:

"Item VI.

"Subject to the foregoing items, I give, devise and bequeath all of my estate, real and personal, of every kind and character which I may own or have the right to dispose of, to the city of Troy, in trust, for hospital purposes.

"It is my will that my residence on West Franklin Street, in said city of Troy, and all adjoining property which I may own, shall be used by said city of Troy as a hospital, which said hospital shall be known and styled as 'The Charles C. Hayner Hospital,' and I hereby authorize the expenditure of a sum not exceeding Twenty-five Thousand Dollars ($25,000.00) out of the principal of my estate to make any addition or additions to my said residence for said hospital, as are deemed necessary by those in charge, as hereinafter provided.

"All remaining funds of my estate, after the above improvement or improvements are made, which are not already invested, shall be invested in United States government bonds, municipal or county bonds of the state of Ohio, or in first mortgages on improved real estate, in Miami County, Ohio, and the income therefrom shall be applied as hereinafter provided.

"Item VII.

"It is my will that said hospital shall be devoted primarily to the service of people in Troy and vicinity who are unable to pay for hospital service, and I hereby direct that the fund provided for in Item Six above shall be used for said purpose.

"Said hospital may also be used for patients who are financially able to pay, but the helpless and the indigent shall always have priority and preference in so far as my estate is concerned.

"The Board of Hospital Commissioners, hereinafter provided for, shall decide who shall be admitted free of charge and said commissioners are authorized to extend such free service throughout Miami County, if they deem best and the funds arising from my estate will permit.

"It is my will that said hospital be open equally to the practitioners of all schools of medicine and treatment recognized by the state of Ohio.

"I earnestly request that the physicians of Troy and Miami County, Ohio, do their best to make the hospital of the greatest possible help to persons who cannot help themselves, and especially to unfortunate children, whom I commend particularly to the care of the public spirited medical profession of Miami County, Ohio.

"Item VIII.

"It is my will that said hospital shall be under the direction and supervision of, and all powers pertaining thereto, shall be vested in a board of five (5) commissioners called the 'Board of Hospital Commissioners,' which said board shall be constituted of the Mayor of the city of Troy, Ohio, who, by virtue of his office, shall be its president, and four (4) commissioners to be appointed by the Judge of the Common Pleas Court of Miami County, Ohio. Two of such commissioners, excluding the mayor, shall be residents of the city of Troy, and all freehold electors of Miami County, Ohio, and they shall not receive any compensation for their services.

"Said commissioners shall be appointed in the first instance to serve for one, two, three and four years, respectively, and thereafter their successors shall be appointed one each year, to serve for the term of four years.

"All matters relating to the founding of said hospital, its operation, maintenance and administration shall be had in accordance with the statutes enacted, governing the establishment and operation of hospitals, in the state of Ohio, and any amendments of said statutes from time to time, in relation thereto, except where the statutory laws are in conflict with the terms and provisions of this will.

"Item IX.

"Should the city of Troy, during the lifetime of my wife or myself, establish a hospital, and it is impracticable to use my residence for such purpose, then I direct that my residence be sold and the proceeds therefrom, together with my entire estate, shall become a trust fund in the hands of the city of Troy, and the income therefrom shall be used to furnish free hospital service to the people of Troy and vicinity and throughout Miami County, if circumstances will permit, who, in the judgment of

the 'Advisory Board' hereinafter provided for, are unable to pay for such care and service.

"Said funds shall be invested in United States government bonds, municipal or county bonds of the state of Ohio, or in first mortgages on improved real estate in Miami County, Ohio, and the income used as above provided.

"Said fund shall be known as 'The Charles C. Hayner Hospital Fund' and shall be managed, controlled and administered upon by what shall be termed the 'Hayner Fund Advisory Board' who shall work in harmony and in connection with the board of hospital commissioners of the already existing hospital.

"Said 'Advisory Board' shall consist of three members, two of whom shall be residents of the city of Troy, Ohio, and freehold electors of Miami County, Ohio, and shall be appointed by the Judge of the Common Pleas Court of Miami County, Ohio, and shall serve without compensation. .

"Said 'Advisory Board' shall be appointed in the first instance to serve one, two and three years, and thereafter their successors shall be appointed one each year to serve for the term of three years."

Thereafter, on February 16, 1928, and about fifteen months after Stouder Memorial Hospital was chartered, the testator executed the first codicil to his will, the pertinent items of which are as follows:

"I hereby revoke and annul Items Six, Seven, Eight, Nine, Ten, Eleven and Twelve of said will and in lieu thereof I hereby substitute the following for Items Six, Seven, Eight and Nine, the same to be deemed and taken as if originally inserted in said will as Items Six, Seven, Eight and Nine respectively.

"The reason for revoking these items of my will is because it is no longer necessary to make provision for the establishment of a hospital, or provide for any contingencies in relation to same as expressed in said Items Six, Seven, Eight and Nine of my said will, because a hospital is now completed which was made possible by the magnificent gift of Mr. A. G. Stouder of this city, known as 'The Stouder Memorial Hospital.' *I can see no reason, however, why the objects and purposes expressed*

*in my will cannot function in conjunction with The Stouder Memorial Hospital.* Therefore, subject to Items One, Two, Three, Four and Five of my said will, I give, devise and bequeath all of my estate, real and personal, of every kind and character, wheresoever situate, which I may own or have the right to dispose of at the time of my death to The First-Troy National Bank & Trust Company of Troy, Ohio, or its successor, in trust for the uses and purposes hereinafter expressed.

"*If it is impracticable to use my residence and its contents for any purpose in connection with The Stouder Memorial Hospital,* then I direct my residence and its contents to be sold, and the proceeds therefrom, together with my entire estate, shall become a trust fund in the hands of The First-Troy National Bank & Trust Company of Troy, Ohio, or its successor, and the net income therefrom shall be used to furnish free hospital service to the people of Troy and vicinity and throughout Miami County if circumstances will permit, who, in the judgment of the Advisory Board, hereinafter provided for, are unable to pay for such care and service. Said fund shall be invested in United States government bonds, municipal or county bonds of the state of Ohio and mortgages on improved real estate in Miami County, Ohio, and said fund shall be known as 'The Charles C. Hayner Hospital Fund,' and shall be managed, controlled and administered upon by what shall be termed 'The Hayner Fund Advisory Board,' *who shall work in harmony and in connection with the trustees of the already existing Stouder Memorial Hospital.* Said Advisory Board shall consist of three members, two of whom shall be residents of Troy, Ohio, and freehold electors of Miami County, Ohio, and shall be appointed by the Judge of the Common Pleas Court of Miami County, Ohio, and shall serve without compensation, and *no member of said Advisory Board shall be the trustee of said The Stouder Memorial Hospital.* Said Advisory Board shall be appointed in the first instance to serve one, two and three years and thereafter a successor shall be appointed one each year to serve for the term of three years.

"If the net income from said fund is more than sufficient to furnish free hospital service for those who are unable to pay for such care and service, as heretofore specified, then in such

event I direct that such surplus shall become a part of the principal of said trust fund. If the demands of the hospital should require additional rooms to properly take care of all who need hospital service free of charge, then *I authorize my trustee to take from the principal trust fund such sum or sums as may be necessary, but not, in any event, to exceed one hundred thousand dollars ($100,000.00), to construct an addition to said The Stouder Memorial Hospital* in keeping with the same, and I further request that said addition be erected as a memorial to myself and my beloved wife, May B. Hayner. I further request that any such action shall have the full approval of said Advisory Board and the trustees of said The Stouder Memorial Hospital.

"I earnestly request that my trustee and said Advisory Board do their best to make this fund of the greatest possible help to people who cannot help themselves, and especially to unfortunate children whom I commend particularly to the care of said Advisory Board, the trustees of said hospital and the public spirited medical profession of Miami County, Ohio.

"Having revoked Item Ten of my said will, I substitute the following for said Item Ten:

"The First-Troy National Bank & Trust Company of Troy, Ohio, or its successor, may sell my farms and invest the proceeds, as hereinbefore provided, but if the main purpose of my will may be promoted, and if my wife has not already disposed of my said farms, as provided in Item Three of my said will, I desire that at least one of said farms may be retained and used as a retreat for children and adults who are in need of outdoor treatment, and also *to use the same to produce some of the necessities of said hospital in the way of food production.*" (Emphasis ours.)

At the time of the execution of the first codicil, the testator's wife was serving as an original trustee of the Stouder Memorial Hospital.

The second codicil was executed on February 6, 1930, after the death of testator's wife, and provided that the net income from the trust theretofore provided for his wife was to be paid to his sister, Mrs. Georgeana H. Kidder, during her life.

Mrs. Kidder was also named by the board of Stouder Memorial Hospital to replace the testator's wife as a trustee of that hospital.

She died on March 10, 1954, and, thereafter, the First Troy National Bank and Trust Company, as the trustee named in the will of Charles C. Hayner, filed a petition in the Court of Common Pleas of Miami County, Ohio, seeking a construction of the will and codicils and named as party defendants to such petition Curtis W. Holder, Glynn Williams and Ruth Machmeyer, as members of the Advisory Board appointed by the court pursuant to codicil number one, Stouder Memorial Hospital of Troy, Ohio, Dettmer Hospital, Inc., the Memorial Hospital Association of Piqua, Ohio, and the Attorney General of the state of Ohio.

The Attorney General was named a party defendant in compliance with the Charitable Trust Act, Section 109.23 *et seq.* of the Revised Code.

Answers to the petition were filed by all parties except the Memorial Hospital Association of Piqua, Ohio, and a stipulation on file as part of the record has resolved all questions raised by the pleadings with but one exception—whether all eligible patients selected by the Advisory Board for free services under the provisions of the will and codicils must be treated at the Stouder Memorial Hospital.

The answer to the question presented depends, of course, upon the intention of the testator. This fundamental rule of construction is well stated in the case of *Findley et al., Trustees,* v. *City of Conneaut,* 145 Ohio St., 480, 62 N. E. (2d), 318, where the third paragraph of the syllabus is as follows:

"3. In an action to construe a will, the sole function of the court is to ascertain and give effect to the intention of the testator. Such intention must be ascertained from the words used in the will by giving to such words their usual and ordinary meaning."

In the case before us, reference to the following language from 41 Ohio Jurisprudence, 588, Section 466, may also be helpful:

"A will and codicil are to be taken and construed together, as parts of one and the same instrument and the intent of the testator is to be gathered from the whole."

With these basic rules in mind, we may recall that the original will provided for a hospital, and that after the execution of

the will and before the execution of the first codicil, the Stouder Memorial Hospital was chartered.

The testator, recognizing the establishment of Stouder Memorial Hospital, then makes the following observation in his first codicil:

"I can see no reason, however, why the objects and purposes expressed in my will cannot function in conjunction with The Stouder Memorial Hospital."

This reference to the original will seems to do more than acknowledge the establishment of another hospital. It also expresses a belief in the mind of the testator that Stouder Memorial Hospital was capable of assuming the same role that he had intended for the Charles C. Hayner Hospital in the original will, and the first paragraph of Item VII of the original will sets forth specifically what that role was to be:

"Said hospital shall be devoted primarily to the services of people * * * who are unable to pay for hospital service."

Further examination of the first codicil discloses the following language:

"If it is impracticable to use my residence and its contents for any purpose in connection with The Stouder Memorial Hospital * * *."

As a matter of fact, we know that the use of the residence and its contents was deemed impracticable, but such information was never within the knowledge of the testator. Suppose then that the residence and contents were used in connection with Stouder Memorial Hospital as the testator intended it could be. Is it logical to believe that such a resource would have been provided in connection with a specific hospital if the testator had not at the same time intended that the hospital have some priority in carrying out his primary purpose?

Your attention is further directed to the following language from the first codicil:

"Said fund shall be known as 'The Charles C. Hayner Hospital Fund,' and shall be managed, controlled and administered upon by what shall be termed 'The Hayner Fund Advisory Board' who shall work in harmony and in connection with the trustees of the already existing Stouder Memorial Hospital."

If the testator had not intended that the Advisory Board

454

be required to do business with the trustees of Stouder Memorial Hospital, what possible reason could have existed for his expressed insistence that a harmonious relationship exist between them? There is obviously no need for the requested harmony if the Advisory Board has unlimited discretion in the selection of hospitals to care for the needy patients. It may also be noted that the testator used mandatory language in directing that the Advisory Board work in connection with the trustees of the already existing Stouder Memorial Hospital.

In the first codicil the testator provided specifically that no member of the Advisory Board shall be a trustee of the Stouder Memorial Hospital. The reason for this provision was no doubt to avoid the possibility of one person holding two patently incompatible positions. This precaution would have been unnecessary, however, if he had not intended that Stouder Memorial Hospital be given some priority and preference in carrying out the primary purpose of his trust, because he did not take the same precaution against any other hospital.

Referring to the Stouder Memorial Hospital, the following language is contained in the first codicil:

''If the demands of the hospital should require additional rooms to properly take care of all who need hospital service free of charge, then I authorize my trustee to take from the principal trust fund such sum or sums as may be necessary, but not, in any event, to exceed one hundred thousand dollars ($100,000.00), to construct an addition to said The Stouder Memorial Hospital in keeping with the same * * *.''

With reference to such provision, the parties to this controversy have agreed by stipulation to the following:

''The Stouder Memorial Hospital is authorized to use up to $100,000 from principal of said fund for the erection of an addition to said hospital, said addition to be designated and known as 'The Hayner Memorial Addition' or some similar title which will perpetuate the memory of said decedent and his wife, and the trustee shall be and is hereby authorized and directed to make said amount available to the said Stouder Memorial Hospital Board for the erection of said addition.''

The testator would hardly have appropriated money for an addition to the Stouder Memorial Hospital if any possibility

existed that that hospital would not be used for the care and treatment of eligible patients selected by the Advisory Board, and the court, in recognizing the intention of the testator, cannot isolate this provision from the primary object of the trust. Neither can the court ignore this provision. We must therefore conclude that the Advisory Board does not have unlimited discretion in the selection of hospitals. The testator gives priority to Stouder Memorial Hospital, and the court must recognize that priority so long as there is no inconsistency or contradiction of terms which might do violence to the testator's primary purpose.

The first codicil discloses other significant references to Stouder Memorial Hospital. Would the testator have provided a farm "to produce some of the necessities of said hospital in the way of food production" if any possibility existed that such hospital would not be used in effectuating the trust purpose?

In the light of changed conditions over the last 30 years and for the sake of convenience, we are admittedly tempted to give the Hayner Advisory Board unbridled discretion and control in carrying out the primary purpose of the trust, but submission to any such temptation does violence to testator's expressed intention. We cannot ignore the fact that Stouder Memorial Hospital is mentioned by name no less than seven times in testator's will, nor can we ignore the rule of construction that requires effect to be given to the words and language contained in the will. See 41 Ohio Jurisprudence, 595, Section 468. See, also, *Townsend's Exrs.* v. *Townsend,* 25 Ohio St., 477. The language intentionally used in a will is presumed to have been placed there for a purpose and cannot arbitrarily be ignored. We are, therefore, of the opinion that Stouder Memorial Hospital has a prior and preferential right to treat the people of Troy and vicinity and throughout Miami County if circumstances will permit, who, in the judgment of the Advisory Board, are unable to pay for such care and service.

This obviously gives rise to another question. What course should the Advisory Board take if Stouder Memorial Hospital cannot provide the room or services necessary to treat an eligible patient?

The answer to this question need not be lengthy because we

can pronounce with confidence that the primary and paramount intention of the testator was to provide for needy patients. The pleadings and briefs filed in this case indicate that the parties to the action are generally agreed on this point. The intention of the testator that Stouder Memorial Hospital provide the services is subordinate to said primary intention, and, if at any time the two are in conflict, the former must give way to the latter. The primary intention must control. In this regard, the following language from the first codicil is again significant:

"I can see no reason, however, why the objects and purposes expressed in my Will cannot function in conjunction with The Stouder Memorial Hospital."

When the testator specifically states that he can see no reason why the objects and purposes expressed cannot function in conjunction with The Stouder Memorial Hospital, he removed the exclusive character of his subordinate intention because he implies thereby that if some reason did exist, his intended procedure would be otherwise.

In conclusion we are therefore of the opinion: That the Hayner Advisory Board must send eligible patients to the Stouder Memorial Hospital if that hospital can provide the facilities and perform the services necessary to effectuate the primary object of the trust; and that the Hayner Advisory Board may, in its discretion, send eligible patients to any other hospital if the said Stouder Memorial Hospital cannot provide the facilities and perform the services necessary to carry out the primary object of the trust.

*Judgment accordingly.*

WISEMAN, P. J., and CRAWFORD, J., concur.