LARGE, Jr., et, Plaintiffs, v. NATIONAL CITY BANK OF CLEVELAND, as Trustee under the Will of Secord H. Large, Deceased, et, Defendants.

Probate Court, Cuyahoga County.

No. 581935.   Decided November 14, 1960.

12

*Messrs. Brown, Mechir & Murphy,* for plaintiffs.
*Messrs. Baker, Hostetler & Patterson* and *Messrs. Morley, Stickle, Keeley & Murphy* and *Mr. John D. Cannell,* for defendants.

For further history see *Omnibus Index* in bound volume.

MERRICK, J. The question herein presented requires the application of the statute against perpetuities contained in Section 2131.08, Revised Code, as follows:

"No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest. All estates given in tail, by deed or will in lands or tenements lying within this state, shall be and remain an absolute estate in fee simple to the issue of the first donee in tail. It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common law rule against perpetuities."

In the will in question, certain charitable bequests failed because of the application of the *mortmain* statute. Section 2107.06, Revised Code. The testator provided for this contingency as follows:

Codicil, Item II * * * "and if * * * said provision shall be invalid as at the date of my death I hereby give, devise and bequeath said trust estate, as constituted at the time of its termination (i. e. upon the death of all of my children and all of the issue of my children) to those who at the time of such termination are the lineal descendants of my children on a per capita basis; and if there be no such lineal descendants, then to those who at that time are my heirs at law according to the laws of the State of Ohio at that time obtaining."

The parenthetic references are as contained in the original of the codicil.

Codicil, Item III. "In all other respects I hereby confirm Item IV and all other items in my said Last Will and Testament dated July 8, 1948." Such item IV so far as is pertinent to the question at hand reads as follows:

"(c) Out of the income derived from the trust estate from time to time held by my trustee, there shall first be paid * * *. The net income remaining * * * shall be paid quarter-yearly or oftener * * * as follows:

"A one-fourth (¼) part thereof to each of my children * * * if alive and so long as each shall live; in the event of the death of a child of mine (whether before or after my death) leaving issue surviving both me and its parent, such issue, so long as alive, shall be paid the share that its deceased parent would have been paid if alive; such payment to such issue to be made as a class (pro rata if, and so long as, more than one issue of a given parent survives); in the event of the death of a child of mine (whether before or after my death) leaving no such surviving issue, or, if issue survives, upon the death of the last of such issue, then and in each such event the payment that such child of mine if living, or such issue if living, would have received shall be paid over to my remaining then surviving children if any so long as each lives and, as a class and per stirpes, to any then surviving issue of a then deceased child of mine so long as such issue lives.

"(d) This trust shall cease and determine upon the death of all of my children and all of the issue of my children. Upon the happening of that event, my trustee shall promptly there-

after pay over * * * to The National City Bank of Cleveland, Ohio, in trust * * *.''

Throughout the will, it must be observed that the words ''issue of my children'' is frequently used. The application of the statute against perpetuities necessarily revolves around the import of the word ''issue'' and a determination of what was intended by its frequent use. While the words ''children'' and ''my children'' are frequently used in the will, nowhere appear the words ''grand children'' or any other descriptive words indicating that the testator intended any interpretation other than the plain meaning usually attached to the word ''issue.''

When a gift by will is made in unambiguous language which, by legal construction, has been accorded a definite and settled meaning, parol evidence is not admissible to show that the language used does not express the testator's true intent. *Townsend* v. *Townsend*, 25 Ohio St., 477; *Foster* v. *Clifford*, 87 Ohio St., 294, 101 N. E., 269; *Estate of Salisbury*, 90 Ohio App., 17; *Sommers* v. *Doersam*, 115 Ohio St., 139, 152 N. E., 387; *Steinbrenner* v. *Dreher*, 140 Ohio St., 305, 43 N. E. (2nd), 283. A testator is presumed to use the words in which he expresses himself in his will in their primary or ordinary sense, and in construing the will the words employed are to be taken in that sense, unless it is manifest from the context of the whole will, or from the subject-matter that the testator intended to use them in a different sense, or unless a reading of the words in their primary or ordinary sense will lead to some absurdity, repugnancy, or inconsistency with the declared intention of the testator as ascertained from the whole will, in which case the natural and ordinary meaning of the words may be modified, extended, or abridged. Where the words when given their natural, ordinary, or popular meaning are plain and unambiguous, and show a clear intention on the part of the testator, they must be given that meaning notwithstanding their effect, and such meaning cannot be departed from for the purpose of giving effect to what it may be supposed was the intention of the testator, or merely because they lead to consequences which are capricious or even harsh or unreasonable. 40 Cyc., 1396.

The language of a will is to be given its ordinary legal significance, unless a contrary intention on the part of the testator appears from the will itself, interpreted in the light of the circumstances of which testator knew. Where in a will,

a testator used the words "legal heirs" discriminatingly, and no intention to use them otherwise is made to appear by the will, interpreted in the light of the circumstances of which the testator was cognizant, a court is not authorized to give such words a meaning other than legal and technical. *Heath* v. *Cleveland*, 114 Ohio St., 535, 151 N. E., 649; *Fifth Third Union Trust Co., etc.* v. *Athenaeum, etc.*, 84 Ohio Law Abs., 208; *Linton* v. *Laycock*, 33 Ohio St., 128; *Carter* v. *Reddish*, 32 Oh St 1; *Bank* v. *Holder*, 109 Ohio App., 445; *Findley* v. *Conneaut*, 145 Ohio St., 480.

A very interesting case in point is *Smith* v. *Hunter*, 86 Ohio St., 106. The testator used the language "to the heirs at law." At the time of the making of the will, there was no statute for the adoption of children. Subsequent to the making of the will and before his death, the testator's daughter adopted a child. In the opinion of Judge Shauk found at page 115, is this language.

"Terms limiting the succession to the daughter's heirs at law, who should be of her blood, were omitted by the testator. If the court should supply them it would be amending his will rather than construing it. However confidently we might follow counsel in the conjecture that the testator would have used such terms if he had forseen all that has now occurred, we should still be admonished that in ascertaining the meaning of a testator it is of first importance to assume that he meant what he said. The meaning of the phrase "her heirs at law" which the testator used to indicate his intention has not been changed since he used it for that purpose. It then meant, and it now means, those who by law might be entitled to succeed to the property of which she should die seized as of an estate of inheritance."

We must then look to determine the effect of the word "issue" in the will at hand.

Issue is a word whose primary meaning, in the absence of anything to show a contrary intent, is that of legitimate lineal descendants indefinitely. *Moon* v. *Hepford*, 2 O. N. P., 365, 3 Ohio Dec., 508.

It is readily apparent that if the aforementioned interpretation and application of the statute against perpetuities is applied to the plain language of the will, that so long as testator had heirs of his body in being, the bequests would not vest. That day might never come if he left productive issue. Cer-

tainly it is already apparent that it will not come within a period of twenty-one years following the lives in being at the time of the death of the testator.

The object of the rule against perpetuities is to confine the vesting of contingent estates to a short period after their creation; and if it is certain when the estate is created, the contingent event must happen within the required time.

The fundamental policy behind the rule and the statute against perpetuities is freedom of alienation. It is designed to prevent the tying-up of property in such a manner as to take it out of commerce and general circulation. *Schonthal* v. *Sylvania*, 60 Ohio St., 407; *Braun* v. *Central Trust Co.*, 62 Ohio Law Abs., 127, 104 N. E. (2nd), 480, 92 Ohio App., 110. The rule seeks to effect this purpose by invalidating future interests which are dependent on contingencies regarded as too remote. Its object is to locate, within the period prescribed, a completely vested title and thus prevent the removal of property from the market for an unreasonable time. The Ohio statute, following the common-law rule against perpetuities is designed to meet the threat to the alienability of land posed by the executory interest, a device made possible by the statute of uses. *Dahlgren* v. *Pierce*, 270 F., 507. By the use of this device the title to land might be made to depend on remote contingencies. 20 Ohio Jurisprudence (2nd), 427, Estates, par. 174. Bogert on Trusts, Par., 213.

The rule and statute apply to indestructible contingent interests, which are rendered invalid at the time of creation if, at that time, it is possible that they may remain contingent longer than lives then in being and twenty-one years thereafter. In any event, the single question to be determined is whether the prescribed contingency or event may not arise until after the time allowed by law. If it may happen beyond the established time limit, the interest is void. The important factor is the time within which the title vests, and has nothing to do with the postponement of the enjoyment. *Schreiner* v. *Altenheim,* 61 Ohio App., 344. The rule that the question of remoteness is to be determined from the time of testator's death, and not of his will, is now well settled. *Cleveland Trust Co.* v. *McQuade*, 106 Ohio St., 238. Gray on The Rule Against Perpetuities, Fourth Edition, Section 231.

It is the judgment of this Court that the primary charit-

able bequests of this entire estate fail because of the application of the *mortmain* statute and that the contingent and alternate provisions creating and defining the trust also fail because of the application of the statute against perpetuities. Consequently the entire estate passed as intestate to the plaintiffs or their legal successors, as of the date of the death of the testator. A journal entry has been docketed according to this finding.