Guy G. MATHEWS, Administrator for the Estate of Delia I. Worcester, Deceased, Appellant,

v.

Lena Mae WARREN, Appellee.

No. 12194.

Court of Civil Appeals of Texas, Austin.

April 16, 1975.

Rehearing Denied May 14, 1975.

Thomas S. Goggan, Delmar L. Cain, Goggan & Cain, Austin, for appellant.

Bob Burleson, Bowmer, Courtney, Burleson & Pemberton, Temple, for appellee.

O'QUINN, Justice.

Guy G. Mathews, as administrator of the estate of his great-aunt, Delia I. Worcester, deceased, brought this lawsuit against Lena Mae Warren alleging conversion of a certificate of deposit account in a savings institution in the sum of $16,000, an account maintained "in the name of Delia I. Worcester and Lena Mae Warren." The administrator also sought exemplary damages and attorney's fees.

Defendant answered setting up several defenses, including the theories of survivorship and completed gift, and a third-party beneficiary theory. The cause was tried before the court without a jury, after which the trial court entered judgment that plaintiff take nothing.

The administrator has appealed and brings forty-seven points of error. Appellee replies by eleven points. We will affirm the judgment of the trial court.

The trial court made and filed extensive findings of fact and conclusions of law, and no additional findings and conclusions were requested. In addition to the findings and conclusions, the record on appeal includes a statement of facts, consisting of more than 170 pages of testimony from 13 witnesses and 31 exhibits introduced at the trial.

Appellate review of the record will be under the rule as stated by McDonald: "When specific findings of fact and conclusions of law are filed, or are stated in the judgment and no additional findings are requested, and a statement of facts is also brought forward, the findings will be sustained if there is any evidence to support them." 4 McDonald, Texas Civil Practice, 16.10(b), p. 29 (1971).

If there is any evidence of a probative nature to support the findings of the trial court, the judgment based on the findings must be affirmed. Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 977 (1951). The trial court had the right to consider all facts and circumstances in evidence and to indulge in reasonable inferences to be drawn therefrom in reaching the court's ultimate finding. In examining the record to determine whether there is any evidence of probative value to support the trial court's finding, an appellate court must view the evidence in the light most favorable to appellee and reject all evidence favorable to appellant against whom the judgment was rendered. Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286, 289 (1951).

Appellant went to trial on his first amended original petition in which he alleged solely a cause of action for wrongful conversion of the $16,000 which deceased had deposited in the Temple Savings Association in the name of both Delia I. Worcester, the deceased, and Lena Mae Warren, the appellee. Appellant alleged that appellee, "without the knowledge, consent or approval of Mrs. Worcester, who was confined in . . . [a] Hospital, withdrew . . . [the funds] and appropriated the money to the use of . . . [appellee]," and that such actions "were willful and malicious, and were . . . with the intent to defraud Delia I. Worcester . . ."

Appellant sought return of the $16,000, imposition of a constructive trust upon the funds, which had been deposited in another account by appellee, and also sought exemplary damages and attorney's fees. Appellant did not plead, and offered no proof, that the account was a mere convenience account or solely for the benefit of Delia I. Worcester.

The record shows that Mrs. Worcester, the deceased, and Mrs. Warren, the appellee, maintained a close personal friendship which had its beginning about 1925, when the husbands of the two women were both working for the Santa Fe Railroad at Temple, and that the friendship between

Mrs. Worcester and Mrs. Warren continued through the years until Mrs. Worcester's death early in March of 1972. Mrs. Warren helped with the care and nursing of Mrs. Worcester's husband in his last illness and until his death late in January of 1970.

It was in April of 1970 that Mrs. Worcester set up the disputed savings account in the amount of $16,000, transferring the funds from a joint account she and her husband had maintained during his lifetime, and caused the new account to be designated "WORCESTER, Delia I. &/or Lena Mae Warren." Both Mrs. Worcester and Mrs. Warren were present when the account was created, and both women signed the customary signature card. The savings association official who supervised the opening of the account testified that Mrs. Worcester stated at the time that "She wanted it to where either party could withdraw the funds at any time with no questions asked." The official testified that Mrs. Worcester was assured the account would be that type.

Between the period in which her husband became ill and died and the period of Mrs. Worcester's last illness and death about two years later, Mrs. Worcester followed a pattern of disposing of much of the considerable estate she and her husband had accumulated. Several witnesses who knew Mrs. Worcester well, testified that she frequently expressed her desire to make gifts during her lifetime in preference to postponing the giving until after her death. Although she had executed a will at one time, Mrs. Worcester later, in consultation with her attorney, wrote and signed an instrument, found after her death in a lock box at the bank, in which she declared, "I hereby revoke all wills heretofore made by me." The writing was dated in August of 1971. Her attorney, a banker, and the pastor of her church testified concerning the occasions during this period when they had dealings with Mrs. Worcester, and all agreed that despite her advanced years Mrs. Worcester remained alert, sensible of her business matters, and

firm as to how she wanted her affairs handled.

Early in January of 1972 Mrs. Worcester suffered a fall at home, resulting in a broken hip. She had had a similar accident about five or six years earlier which she survived. Apparently as a result of her last fall, Mrs. Worcester died on March 2, 1972, nearly two months later. While in the hospital Mrs. Worcester continued to arrange her own affairs, including complete details for her funeral services and burial. On one occasion in this period she made a cash gift to an old friend of $1,000.

After setting up the $16,000 savings account jointly with Mrs. Warren in 1970, Mrs. Worcester in November of that year conveyed to Mrs. Warren the home in which Mrs. Worcester lived until her death, together with "all the household furnishings and personal belongings located in said above property." Simultaneously with this deed, Mrs. Worcester by written instrument leased the home from Mrs. Warren for a nominal rental of one dollar per year. Both writings were acknowledged and recorded. In the latter part of the following February Mrs. Worcester made arrangements for Mrs. Warren to have authority to enter the bank lock box Mrs. Worcester maintained. Later that year, in October of 1971, Mrs. Worcester provided for Mrs. Warren to have authority to draw funds from Mrs. Worcester's checking account, but without providing right of survivorship.

In August of 1971, the same month in which Mrs. Worcester revoked all prior wills, she transferred $20,000 from a savings account and opened three savings accounts for friends, one account for $10,000 and each of two others for $5,000. In February of 1972, while Mrs. Worcester was confined in the hospital and only about two weeks before her death, she gave written instructions to a savings association that a note being collected in monthly installments from another couple was to "be paid in full" in event of her death. The balance of the note when Mrs.

Worcester died was about $4,100. In 1971 Mrs. Worcester also set up two savings accounts, each for $20,000, in trust for two members of her family. Her attorney testified that Mrs. Worcester expressed to him her desire to make disposition of her estate during her lifetime so "that she could see the effect on the people to whom she was making the gifts . . . rather than to give it away by will after her death."

Mrs. Warren testified that from the time Mrs. Worcester set up the $16,000 joint savings account in April of 1970 until Mrs. Warren cashed the certificate on January 17, 1972, Mrs. Warren had possession of the certificate. Mrs. Warren cashed the certificate and moved the funds into a separate savings account in her own name. Thereafter, some months after Mrs. Worcester's death, Mrs. Warren moved the money from the savings association to a savings account in one of the Temple banks. Most of the dividend checks paid on the $16,000 savings account were not endorsed by any person, but one check was endorsed by Mrs. Warren during the lifetime of Mrs. Worcester and prior to the date appellant alleged the conversion took place. The trial court found that in opening the account Mrs. Worcester acted with donative intent toward Mrs. Warren, and that Mrs. Warren was in fact the person who exercised dominion and control over the account from the time it was opened.

The trial court, in the findings and conclusions, recognized a pattern established by Mrs. Worcester, extending over a number of months, of giving during her lifetime to friends whom she loved and trusted, based in part upon her desire to see the effects of her gifts and in part upon her lack of close relations with kinsmen, although she remembered at least two members of her family with substantial trusts.

The trial court concluded that appellant, having the burden of proof, "wholly failed to meet his burden of proof," and that appellee was "entitled to judgment that Appellant take nothing at the time that Appellant rested his case in chief."

"Appellant failed to prove or even raise the issues," the court stated, "of breach of trust, fraud, overreaching, wrongful appropriation, lack of knowledge or consent by Delia I. Worcester, or lack of approval by Delia I. Worcester. Appellant failed to prove or even raise an issue on whether or not the $16,000.00 account in question was intended as a mere convenience account for the benefit of Delia I. Worcester or whether there was some sort of trustee relationship between Appellee and Delia I. Worcester with respect to this account. Under these circumstances, after a full trial on the merits, the undersigned trial judge concluded that a take nothing judgment was proper based on Appellant's total failure of proof, even disregarding all the compelling direct and circumstantial evidence thereafter offered by Appellee."

The findings of the trial court are supported by abundant evidence of probative value, and the conclusions of law based on the findings are sound.

The judgment of the trial court is affirmed.

Affirmed.