**C. R. GROVES, Appellant,**

v.

**BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA, Appellee.**

**No. 1489.**

Court of Appeals of Texas,
Tyler.

June 17, 1982.

Linn H. McCain, Marks & Black, Dallas, for appellant.

Douglas D. Fletcher, Law Offices of Jack D. Sides, Jr., Dallas, for appellee.

SUMMERS, Chief Justice.

This is an appeal from a suit for breach of contract wherein appellee Business Men's Assurance Company of America (BMA) sued appellant C. R. Groves (Groves) for breach of contract in failing to repay money paid to him allegedly as advances during his employment as a special representative of the company. Groves answered with a general denial. After a nonjury trial, the trial court rendered judgment in favor of BMA for $3,679.83, attorney's fees in the amount of $650.00 and costs of court. From this judgment, Groves has appealed.

We affirm.

The trial court made and filed findings of fact and conclusions of law, and no additional findings and conclusions were requested. The record on appeal also includes a statement of facts.

The trial court, in its findings of fact, in pertinent part, found the following in support of its judgment:

1. From August 24, 1978, through June 29, 1979, Groves acted as a "special representative" for BMA.

2. While working as a "special representative" for BMA, Groves received $1,350.00 in November 1978, $1,500.00 in December 1978, $1,500.00 in January 1979, and $300.00 in February 1979, a total of $4,650.00 from BMA.

3. Said money was advanced to Groves with the agreement that BMA was to be repaid by Groves.

4. Groves did repay BMA $970.17 through insurance premium commissions earned by him.

5. Groves has failed to repay BMA the remaining $3,679.83 which Groves owes BMA.

Groves has predicated his appeal upon ten (10) points of error in which he has challenged the legal and factual sufficiency of the evidence to support each of the five findings of fact set forth above. We shall first address Groves' complaint that there is no evidence to support findings 1, 2 and 3.

■ The law is well settled that when specific findings of fact and conclusions of law are filed, no additional findings are requested, and a statement of facts is also brought forward, the findings will be sustained if there is any evidence to support them. *McWhorter v. City of Winnsboro*, 525 S.W.2d 701, 705 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.); *Mathews v. Warren*, 522 S.W.2d 569, 570 (Tex.Civ.App.— Austin 1975, writ ref'd n. r. e.); See also 4 R. McDonald, Texas Civil Practice § 16.-10(b), p. 29 (1971).

■ If there is any evidence of a probative nature to support the findings of the trial court, the judgment based on the findings must be affirmed. *Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972, 977 (1951). The trial court had the right to consider all facts and circumstances in evidence and to indulge in reasonable inferences to be drawn therefrom in reaching the court's ultimate finding. In examining the record to determine whether there is any evidence of probative value to support the trial court's finding, an appellate court must view the evidence in the light most favorable to appellee and reject all evidence favorable to appellant against whom the judgment was rendered. *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 289 (1951).

■ The record reflects that on August 24, 1978, Groves entered into a written contract entitled "Sales Agreement" with BMA whereby he was appointed a "special representative" for the purpose of soliciting and procuring applications for life and health insurance and annuity policies issued by BMA. From August until November 1978 Groves' work for BMA was on a part-time basis but in November 1978 he began working full time for BMA. In November and December 1978, and January and February 1979, Groves approached J. S. Harp, an employee of BMA, and requested that he be paid some money. On those four occasions, BMA made the following payments to Groves: $1,350.00, $1,500.00, $1,500.00 and $300.00 for those four months, respectively. Groves asserts that these payments were salary and not required to be repaid; that in November of 1978 he made a subsequent

oral agreement for employment with BMA's agent, Mr. Harp, and thereafter ceased to act as a special representative. BMA contends that such payments were advances requested by Groves against commissions which he might earn as compensation under the sales agreement, and that such advances were to be repaid by Groves. We agree with BMA's contention.

The material part of finding of fact number 1 is supported by the evidence. Groves began his work as a special representative on August 24, 1978. Although the ending date of June 29, 1979, does not appear in the record, this part of the finding is harmless since it is undisputed that Groves was working for BMA at the time the payments which formed the basis of this suit were made to him by BMA. Furthermore, the record reflects that at all pertinent times during Groves' employment with BMA his status was that of a special representative. The fact that he went from part-time to full-time work in November 1978 did not change the sales agreement nor the contractual relationship of the parties. Article II, Paragraph (4)(a) of the sales agreement called for the special representative to devote his entire business time to the purpose of his appointment. The agreement in Article V, Paragraph (17) also provided that no provision thereof might be waived or modified except by an instrument in writing executed by the President or an Executive Vice President of BMA. The record is devoid of any evidence of probative force reflecting a modification of the agreement.

Finding of fact number 2 is supported by the evidence. It is undisputed that Groves received payments totaling $4,650.00 from BMA during the four-month period from November 1978 through February 1979 in the amounts set forth in this finding. The record does not reflect any change in the sales agreement and his status remained that of a special representative.

Finding of fact number 3 is likewise supported by the evidence. We agree with BMA that the payments made to Groves were advances against commissions which he might earn under the agreement and not

salary. Article III, Paragraph (10)(a) of the sales agreement provides that the "compensation of the Special Representative shall consist of (1) commissions on premiums paid in cash to and received by BMA on policies of insurance issued upon applications obtained by the Special Representative, and (2) bonuses on certain commissions." Groves testified that there was no agreement that he was to be paid a set monthly amount; that he requested and received the payments on four different occasions in amounts decided by Mr. Harp. Groves admitted during his testimony that it was customary in the insurance business for advances to be made to insurance salesmen and for those advances to be repaid through commissions earned.

Moreover the sales agreement by its terms granted a lien to BMA as security for the payment of any debts due or to become due from the special representative to BMA. Article II, Paragraph (8) thereof reads in part:

INDEBTEDNESS AND LIEN. The Special Representative hereby expressly grants to BMA a first lien upon any commissions, claims for commissions, or other compensation payable to him, his executors, administrators or assigns under this Sales Agreement, as same may be supplemented or amended, as security for:

\*    \*    \*    \*    \*    \*

(b) any debt due or to become due from the Special Representative to BMA or any person acting for BMA. BMA may at any time deduct from any moneys payable under this Sales Agreement, or from any other source, any such debt or debts due BMA at any time from the Sales Representative. This lien shall not be extinguished by the termination of the appointment hereunder.

In deciding if the evidence was factually sufficient to support findings 1, 2 and 3, we have reviewed all the evidence in the light announced by the Supreme Court in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We conclude that the evidence is factually sufficient and that none of the

findings is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

■ Groves' last four points of error challenge the evidence supporting findings of fact numbered 4 and 5. These points seek to find error in the fact that the court rendered judgment for BMA in the amount of $3,679.83, asserting there is no evidence or factually insufficient evidence to support the finding that Groves repaid $970.17 and the remaining amount of $3,679.83 which the court found to be still owing. Although there is testimony in the record that Groves earned and was given credit for commissions earned from insurance sold by him during his employment, there was admittedly no evidence as to the specific amount of such credits given to Groves. In accordance with his findings, the trial court in his judgment reduced the amount of Groves' indebtedness to BMA from $4,650.00 to the lesser amount of $3,679.83. Groves should not be heard to complain about such findings which reduced the amount for which he would be liable to BMA. If the court erred in reducing the judgment based thereon, it was an error in Groves' favor. A party cannot complain of an error in a finding where the error was favorable to him. *McLain v. Sitton*, 374 S.W.2d 945, 947 (Tex.Civ.App.—Beaumont 1964, no writ); *Turinsky v. Turinsky*, 359 S.W.2d 114, 115 (Tex.Civ.App.—Dallas 1962, no writ). 5 Tex.Jur. 3rd Appellate Review § 584.

All of appellant's points of error have been considered and are overruled.

The judgment of the trial court is affirmed.