In re ESTATE OF Arthur T. MORRIS, Non Compos Mentis, Mary Ann Medola, Appellant,

v.

**FIRST INTERNATIONAL BANK,** Appellee.

No. 04-82-00005-CV.

Court of Appeals of Texas, San Antonio.

Dec. 7, 1983.

James R. Bass, San Antonio, for appellant.

Michael Thurman, Thurman & Phillips, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

PER CURIAM.

The principal question on appeal is whether a niece, appellant herein, waived her prior right of appointment as guardian of the estate of her uncle, Arthur T. Morris, a person of unsound mind. TEX.PROB. CODE ANN. § 220(b) (Vernon 1980).[1] The trial court found there was a waiver and continued the guardianship in First International Bank of San Antonio, appellee. We affirm.

Section 109(c) provides in part:

Guardians for Persons Other Than Minors. If a person is an incompetent, or has not waived such right and is qualified, applies for letters, the letters previously granted shall be revoked and other letters shall be granted to the applicant.

\* \* \* \* \* \*

---

1. Section 220. Appointment of Successor Representative

\* \* \* \* \* \*

(b) Because of Existence of Prior Right. Where letters have been granted to one, and another whose right thereto is prior and who

one for whom it is necessary that a guardian be appointed to receive funds due from any governmental source, these rules shall govern:

\* \* \* \* \* \*

(2) If there be no qualified spouse, the nearest of kin to such person, who is not disqualified, or in case of refusal by such spouse or nearest of kin to serve, then any other qualified person shall be entitled to the guardianship.

\* \* \* \* \* \*

The Ward in this case is a veteran, and his estate consists solely of funds derived from a governmental source; the Veteran's Administration supervises the welfare of the veteran. Originally another bank was appointed guardian of the estate. The facts reflect that appellant, Mary Ann Medola, was fifteen years of age in 1944 when her mother, Nettie Martinez, executed a waiver of her prior right of appointment as guardian of this estate, paving the way for the court to appoint a bank as guardian. That arrangement continued until 1974 when the original bank resigned as guardian and appellee, the First International Bank of San Antonio (Bank), became the successor guardian. No citation or notice was required or issued. § 220(a).

The evidence further shows that Nettie Martinez continued to care for her brother and that he lived with her until 1977, when she became ill. At that time appellant moved her uncle to her house where she resided with her family. Their home is located on three acres of land, and it is apparent the Ward has received comfort and loving care in these surroundings. The guardian Bank issued checks to Nettie each month for the care of the Ward, and further forwarded extra sums of money for needed incidentals. Appellant testified both she and her husband had telephoned trust officers at the Bank to ask for incidental money at Nettie's request. Further, she indicated she knew the money derived from a veteran's pension and that the Bank had it in a "trust fund." Nettie died in January 1979.

A guardianship field officer from the Veteran's Administration, already known to appellant, visited her home as he was required to do, and told her the checks would be sent directly to her from the Bank. Nettie had simply turned them over to her before that time. At the time of suit the value of the estate was approximately $46,702.00 and consisted of savings and savings certificates.

The sum of $1000.00 was available for incidental expenses for the Ward each year. Appellant asked the Bank for and received sums of money from time to time from this fund. However, when she asked for $150.00 to buy a used refrigerator, which she said would benefit the Ward, the trust officer refused. In June of 1981, appellant requested incidental expense money to purchase a wedding gift from the Ward to her son and a birthday gift. The trust officer refused to disburse the money. Shortly thereafter, appellant filed this suit, her application for guardianship because of prior right over incumbent. She testified she had no knowledge of the Bank's guardianship until June 11, 1981.

Appellant, in her first point of error declares the court erred by holding in a conclusion of law that she waived the prior right to be appointed guardian by her conduct and is therefore estopped to urge the prior right. In her second point of error she attacks the finding of fact that she had knowledge of the Bank acting as corporate guardian since 1977, alleging insufficient evidence.

■ The right to appointment as guardian of the estate of an incompetent may be waived by conduct as well as by express declaration. *Waters v. King,* 353 S.W.2d 326, 328 (Tex.Civ.App.—Dallas 1961, no writ); *Vannoy v. Gibson,* 102 S.W.2d 492, 493 (Tex.Civ.App.—Dallas 1937, no writ). The estopped party must have known of the appointment of another and have made no objection for such a waiver by conduct to exist. *Newberry v. Gauntt,* 292 S.W. 629, 630 (Tex.Civ.App.—San Antonio 1927, writ ref'd).

It is undisputed that appellant dealt with the Bank in behalf of her mother before the Ward actually began living in appellant's house; that some of these telephone calls were to the same trust officer who testified at the trial, Rebecca Cotton. Also appellant had received and cashed the checks each month from the same Bank which bore the Ward's name and his guardianship number. It is likely a trier of fact could find knowledge as to the corporate guardianship of the Bank existed since 1977 when the Ward moved to the Medola house.

A trier of fact could also find that knowledge of the guardianship of the Bank existed in 1980 when the checks were sent directly to appellant. The trust officer testified that on two occasions she specifically discussed the duties of the guardianship of the Bank with appellant, using the term "corporate guardianship." The first time occurred when the appellant told Cotton more money was needed for the Ward's care in 1980. Cotton explained to her, "[T]he corporate guardianship did not decide how much money was paid ... [in] ... V.A. type guardianships. . . . [I]n order to get more money, the V.A. would have to approve it and ... we would get a court order and pay that." The evidence shows the sum of money disbursed each month was raised from $400.00 to $600.00.

The second occasion arose when Cotton contacted appellant to obtain information needed for a social security benefits application the Bank was filing for the Ward. "I told her it was one of our responsibilities as guardian, and we were filing in our name, First International Bank, as guardian of the estate. . . ." This conversation occurred during the first quarter of 1981. (The Ward was found not eligible for the benefits.)

■ When findings of fact and conclusions of law are brought forward, along with a statement of facts, as in this case, the findings will be sustained if there is any evidence to support them. *Matthews v. Simmons,* 589 S.W.2d 156, 158 (Tex.Civ.App. —Tyler 1979, no writ); *Mathews v. Warren,*

522 S.W.2d 569, 570 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.).

■ The trial court may consider all facts and circumstances in evidence and indulge in reasonable inferences to be drawn therefrom in reaching its ultimate finding. This reviewing court must determine whether there is any probative evidence to support the trial court's finding. The findings of the trial court in a nonjury case have the same presumption of conclusiveness and weight on appeal as the verdict of a jury, and the court is the sole judge of the credibility of the witnesses and may believe or disbelieve any witness, in part or entirely. *Chitsey v. Pat Winston Interior Design, Inc.,* 558 S.W.2d 579, 581 (Tex.Civ.App.—Austin 1977, no writ). The trial court found that appellant had knowledge of the Bank's guardianship and concluded that appellant had waived her prior right of appointment as guardian of the estate. In its judgment the court appointed appellant guardian of the person. We find ample evidence in the record of probative value to support the court's finding. We agree with the conclusion. The first two points of error are overruled.

■ The trial court did not make findings concerning the status of the appellant after her mother expressly waived her prior right in 1944. The question would be whether appellant had a prior right existing, or whether her mother extinguished appellant's right to be appointed upon her mother's death. Stated another way, appellant may have had nothing that she could have waived in favor of another party once she attained her majority. *See Polasek v. Janecek,* 22 Tex.Civ.App. 411, 55 S.W. 522 (Galveston 1900, no writ). Appellant states that the only party for which this right may have been waived was the first bank, which could not then be removed except for statutory cause. However, she says, that disability ended when the first bank resigned in 1974 as guardian. As we noted, this interesting point of contention did not surface at the trial. Only the appellant's brief speaks to it. Therefore, we do not make any determination of the appellant's guardianship

**136**

rights existing immediately after Nettie's death based upon possible extinguishment by Nettie. Whether Nettie effectively extinguished appellant's prior right not only with the first bank but also with the appellee successor Bank was not addressed in the trial court's findings of fact and conclusions of law, nor does the Bank argue that it was. Nor is it argued that waiver occurred in 1974. We find no necessity to address this matter on appeal.

■ The trial court did conclude further, and appellant challenges the conclusion, that appellant could not "properly and prudently manage the estate of the Ward" and was thus disqualified to be appointed guardian of the estate. Section 110 of the Probate Code provides the following persons shall not be appointed guardians:

> (g) Those who by reason of inexperience or lack of education or for other good reason, are shown to be incapable of properly and prudently managing and controlling the ward or his estate.

TEX.PROBATE CODE ANN. § 110(g) (Vernon 1980).

The trial court had before it the evidence and the witnesses. It could believe or disbelieve any witness. *Chitsey v. Pat Winston, ante.* The court could properly draw this conclusion from the evidence before it. Point of error three is overruled.

In view of our disposition of the first three points of error, we do not find it necessary to make disposition of the remaining five. They challenge the trial court's findings regarding the keeping of records, want of receipts of expenditures, requests for funds to be used for her family and not solely for the Ward, and that appellant lacked credibility for truth and veracity. We will state that, while appellant's testimony reflects nervousness, possibly non-attention to questions of counsel, and many self-serving statements, it just as strongly reflects a family love for her uncle, concern, and family pride. We think the court wisely appointed her the guardian of the person.

The judgment is affirmed.

