Karen Voigt OFFER, Appellant,

v.

**TRANSAMERICA TITLE INSURANCE COMPANY and Alamo Heights Realty, Appellees.**

No. 04–81–00444–CV.

Court of Appeals of Texas, San Antonio.

June 1, 1983.

Patsy Cheyney, San Antonio, for appellant.

Steven Gross, Robert N. Ray, San Antonio, for appellees.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

BUTTS, Justice.

A real estate transaction precipitated this action; appellant, Karen Voigt Offer, sued in tort, alleging the cause of action arose from a breach of contract. In her pleadings, among other allegations not pertinent to this appeal, appellant charged that appellee, Transamerica Title Insurance Company, wrongfully delivered a warranty deed to the buyers of her property, converted the property, was negligent in failing to exercise its professional duties as escrow agent, and that she suffered damages as a consequence. She alleged misrepresentation of the true facts of the sale by appellee, Alamo Heights Realty, since the promissory note of the buyers to her was for less than the full amount of the contract. She further alleged negligence by Alamo Realty in their

capacity as her representative. The suit was tried to the court on the tort theory. The trial court rendered a take nothing judgment in favor of Transamerica and Alamo Realty. Alamo Realty did not file a brief on appeal. By challenging six of the trial court's findings of fact and the two conclusions of law, appellant brings to this court eight points of error. We affirm the judgment.

The evidence shows that appellant and the buyers of her Alamo Heights duplex executed an earnest money contract on November 26, 1980. [Appellant did not sue the buyers for rescission of the contract, and they are not parties to the suit]. Alamo Realty represented her as seller; Transamerica, as the escrow agent, handled the "closing", and provided title insurance. Attorneys, not parties to the suit,. prepared all the legal instruments of title conveyance.

The total purchase price was $66,000.00 with a cash down payment of $14,140.00. There was no later disagreement as to those sums. The crux of the lawsuit centers on the method of financing the remaining sum owed by the buyers, $51,860.00.

The earnest money contract of November 26, 1980, provided that appellant would receive a promissory note from the buyers for the principal sum of $51,860.00 at 10% per annum. However, Alamo Realty caused to be drawn prior to the date of closing, a second "earnest money contract" which appellant did not sign. It provided for the same total purchase price and the same down payment. The crucial change was in the method of financing the sum of $51,-860.00.

Kathleen Voigt, the mother of appellant and not a party to this suit, sold this duplex several years ago to her daughter. She carried the note which secured the property at 6% interest. It was her testimony that she would not carry a note on the property at that interest now. Both women testified they wanted the balance which appellant owed on the note to be included in the total sum to be financed by the buyers at 10%. They understood that would be done.

The attorney for Alamo Realty, who is also a real estate broker, testified that appellant was in a hurry to close the sale in early January because she wanted some cash for a certificate of deposit. The new contract which he caused to be drawn provided that the sum of $35,578.00 would be financed at 10% while the remaining sum of $16,281.33 (the principal owed on Voigt's note) would be *assumed* by the buyers. The interest rate remained 6% on that note. The necessary title instruments complying with this method were then drawn.

On the day of closing, January 6, 1981, Voight, the mother of appellant, was in the title company office with the real estate broker, a real estate saleswoman, and Noel Milburn, who was an escrow officer for the title company. The broker testified he explained the entire transaction to Voigt, stating it would be an assumption of the underlying note. He showed her a letter from her collection bank which set out the balance owed on the note as of the closing date. She wrote, "I approve." on the bank letter. He further testified that he had discussed the sale with appellant, that she always seemed to be in a hurry when he saw her, but that she "knew what was going on." He explained with the original earnest money transaction the appellant would be required to put up her own money [to indemnify the outstanding lien] and that she did not want to use her own money, that she wanted cash instead to apply to the certificate of deposit. She received the sum of $8,253.64 upon closing and invested it in a certificate of deposit. The broker agreed upon cross-examination that other methods such as a subordinating lien or a note might have been available, but stated no one had asked for another method.

On that same date Voigt took Milburn, as a closing officer, to appellant's place of employment. Appellant is a school teacher, and the papers were signed while she took a "break" in the teachers' lounge at school. When asked about signing the warranty deed at the school, appellant responded, "She [Milburn] started talking very fast and said blah, blah, blah. I assumed it was

what we had agreed on so I didn't read them. I just signed them."

Milburn testified that she explained the instruments to appellant, the closing statement, the assumption, the warranty deed with the second lien retained in favor of the seller.

The trial court entered fourteen findings of fact and two conclusions of law after ruling in favor of the two appellees. Appellant challenges on appeal only these findings: that neither appellee was negligent in the acts it performed on behalf of appellant; that appellant suffered no damages as a result of the actions performed for her by the appellees, and; that appellant suffered no damages which were proximately caused by the acts of either appellee. She also challenges the conclusions of law.

Where there is probative evidence to support the findings and judgment of the trial court, the findings are controlling on the reviewing court and will not be disturbed on appeal. *Ray v. Farmers State Bank of Hart,* 576 S.W.2d 607, 609 (Tex.1979). In the absence of exceptions or objections to the trial court's findings of fact, the appellate court is bound thereby. *Wade v. Anderson,* 602 S.W.2d 347, 348 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.).

In the instant case we may presume the evidence supported these unchallenged findings: Both appellees performed the acts they contracted to perform. Appellant received the consideration from both appellees for which she contracted. Neither appellee acted willfully. Neither appellee was consciously indifferent in the performance of acts on behalf of appellant.

 It is improper to treat negative fact findings as more than the failure of the trial court to find these issues. The negative findings mean, in law, that appellant failed to carry her burden in proving these matters. *C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966) [jury's negative findings]. Evidence is not required to support the negative answer. *Id.; Prunty v. Post Oak Bank,* 493 S.W.2d 645,

646–47 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.).

 In the present case appellant asserts the disputed fact findings are erroneous because the facts were established as a matter of law, and, in the alternative, the fact findings are against the great weight and preponderance of the evidence. *See* Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960).

Appellant verified it was she who was in a hurry to close the sale to get "the money for the house" in order to "get 15 percent [on a $100,000.00 certificate of deposit]. So that's why I was in a hurry." She denied she was told she would "have to come up with any money" under the first earnest money contract. Her understanding was that the buyers would pay $16,000.00 directly to her mother and $51,000.00 to appellant at 10% interest. [Neither contract provided for those terms]. However, she agreed she was not listening closely when the papers were explained to her and stated she was not familiar with legal terms. She stated she had asked no questions about the transaction.

In a nonjury case the trial court is the sole judge of the credibility of the witnesses and may believe or disbelieve any witness, in part or entirely. *Chitsey v. Pat Winston Interior Design, Inc.,* 558 S.W.2d 579, 581 (Tex.Civ.App.—Austin 1977, no writ). The findings of the trial court in a nonjury case have the same presumption of conclusiveness and weight on appeal as the verdict of a jury. *Id.* In R. McDonald, 4 Texas Civil Practice § 16.10(b) (1971), the rule is stated:

> When specific findings of fact and conclusions of law are filed … and a statement of facts is also brought forward, the findings will be sustained if there is any evidence to support them.

If there is any evidence of a probative nature to support the findings of the trial court, the judgment based on the findings must be affirmed. *Cavanaugh v. Davis,* 149 Tex. 573, 235 S.W.2d 972, 977 (1951).

After reviewing the evidence we cannot say that, as a matter of law, appellant

established negligent acts by Transamerica and Alamo Heights Realty. Nor did she establish as a matter of law that she suffered damages as a result of the actions performed for her by the two appellees. Nor did she establish, as a matter of law, that the acts of the two appellees proximately caused damages to be suffered by her. We further cannot say that the failure of the trial court to so find is against the great weight and preponderance of the evidence.

We accordingly overrule the points of error and hold that the trial court heard evidence of probative force to sustain the findings of fact. We further hold the trial court correctly concluded the appellees were not liable to appellant in the cause of action presented.

The judgment is affirmed.